No. 38,814

JACK LUIS TRUGILLO, *Petitioner*, v. CHARLES EDMONDSON as Warden of the Kansas State Penitentiary at Lansing, substituted for Robert Hudspeth as Warden, *Respondent*.

(270 P. 2d 219)

Opinion filed May 8, 1954.

*Joe T. Rogers,* of Wichita, argued the cause and *Roy L. Rogers,* of Wichita, was with him on the briefs for the petitioner.

*Robert L. Morrison,* of Wichita, argued the cause and *Harold R. Fatzer,* attorney general, and *Paul E. Wilson,* assistant attorney general, were with him on the briefs for the respondent.

The opinion of the court was delivered by

SMITH, J.: This is an original proceeding in habeas corpus. The petitioner was convicted of murder in the first degree and his punishment fixed at death. He was, pursuant to sentence, conveyed to the state penitentiary at Lansing. On July 19, 1949, his sentence was by the governor commuted to life imprisonment in the state penitentiary. He is now held in that institution.

On May 1, 1953, he filed this petition for a writ of habeas corpus. He alleged that his conviction and sentence were void because at the trial he was not represented by competent and efficient counsel, was wrongfully advised as to what his attitude should be at his trial and no defense to the charge was offered in the trial on account of inefficiency of counsel; that the sentence was void because the verdict was received by the court but was not approved by it; during the same term the district judge became dissatisfied with the verdict and stated he would set it aside if the sentence was not commuted from death to life imprisonment and the county attorney, the attorney for petitioner at the trial, and the district judge, before whom the case was tried, held a conference with the governor's counsel, in which an agreement was reached between the district judge, the county attorney, petitioner's attorney and the attorneys for the governor, by which the sentence of death was commuted to life imprisonment; that these proceedings denied petitioner due process of law and by reason of such denial the judgment was void. This petition was signed by counsel for the petitioner other than the counsel that represented him at his trial for murder. Attached to

it was a statement, not signed, but which purported to be a statement of the petitioner as to what took place at the time of the alleged murder and certain occurrences during his trial.

To this petition the respondent answered first by way of a general denial. The answer then set out the verdict of the jury, finding the petitioner guilty, and fixing his punishment as death; that notice of appeal was filed and the appeal later dismissed and the motion to dismiss stated—

"Comes now the appellant, Jack Luis Trugillo, and moves the Court that his appeal to this Court be dismissed instanter for the reason that he has perfected an application to the Honorable Frank Carlson, Governor of the State of Kansas, for commutation of his sentence from death by hanging to imprisonment for life, and that said matter will not be considered by the Governor so long as this appeal remains pending, and the case not finally adjudicated."

The answer then stated that the sentence was commuted to life imprisonment; that the sentence had not expired and petitioner had not been pardoned or paroled and was lawfully confined in the custody of the respondent by virtue of the judgment and order of the district court, to which reference had been made.

A member of the bar of Shawnee county was appointed commissioner to hear evidence and make findings of fact and conclusions of law. The commissioner has made his report. In this report the commissioner stated the issues of fact to be four, as follows:

"1. Did the original trial constitute due process of law?

"2. Is the failure to make the proceeding for the appointment of counsel a part of the Journal Entry fatal as to the jurisdiction of the Court?

"3. Did the Judge of the District Court have the power to set aside the verdict after sentence had been pronounced and the prisoner confined?

"4. Was the appointed counsel competent, and did he serve him loyally and to the best of his ability?"

He answered the questions contrary to the contentions of petitioner and found the facts to be contrary to the contention of petitioner. He recommended as a conclusion of law that the writ of habeas corpus be not issued.

Counsel for the petitioner saw fit to attack the report by what he terms the assignment of error. This is not the usual manner of challenging the correctness of a commissioner's report. We shall, however, since this is a habeas corpus action treat this assignment as a proper motion attacking the correctness of the report. It is as follows: That the commission erred in refusing and failing to find the appointment of counsel was not sufficient compliance with G. S. 1949, 62-1304, to give the court jurisdiction to try the cause;

in holding that G. S. 1949, 62-1304, did not require full and complete record of the appointment of counsel to be incorporated in the journal entry where the accused accepted such service and the counsel appointed was at the request of defendant; in finding that the record in the case established counsel appointed at defendant's request was capable, competent and loyal; in finding that the failure of counsel to pursue the common-law manslaughter theory rather than that of lack of mental ability was a decision about which competent counsel might disagree; in not finding that no theory of law was pursued by defendant's counsel; in failing to find that by reason of failure to comply with G. S. 1949, 62-1304, in the appointment of counsel the court had no jurisdiction to try the cause; in finding that the trial judge was without jurisdiction over the accused after sentence was passed and his participation in the subsequent hearing for executive clemency had no legal effect; in finding that the representation made by counsel for defendant did not render the proceeding void for lack of due process; in finding that the conviction and sentence under circumstances did not violate the fourteenth amendment to the United States constitution; in not finding that by reason of the nature of the representation of defendant by his counsel the proceedings were void by reason of their failure to comply with the fourteenth amendment; and in refusing to recommend that a writ of habeas corpus issue.

Some of the above are somewhat intermingled. Most of them require an examination of the record before the commissioner. We do this pursuant to the rule that in an original action the report of our commissioner is advisory only. (See *Bissell v. Amrine,* 159 Kan. 358, 155 P. 2d 413; also *Miller v. Hudspeth,* 164 Kan. 688, 192 P. 2d 147.)

The entire proceedings in the criminal case were made a part of the record and were considered and examined by our commissioner as well as the evidence of witnesses who appeared before the commissioner. The entire record will be examined by us.

The first point argued by petitioner is that the alleged failure of the trial court to comply with G. S. 1949, 62-1304, deprived the trial court of jurisdiction. This section provides in part as follows:

"If any person about to be arraigned upon an indictment or information for any offense against the laws of this state be without counsel to conduct his defense, it shall be the duty of the court to inform him that he is entitled to counsel, and to give him an opportunity to employ counsel of his own choosing, if he states that he is able and willing to do so. If he does ask to consult counsel of his own choosing, the court shall permit him to do so, if such counsel

is within the territorial jurisdiction of the court. If he is not able and willing to employ counsel, and does not ask to consult counsel of his own choosing, the court shall appoint counsel to represent him, unless he states in writing that he does not want counsel. . . ."

Counsel makes the categorical statement that not a word appears in the record that petitioner made any request with reference to the appointment of counsel or was consulted with reference to it. This is not quite correct. Honorable Howard C. Kline, now a district judge in Sedgwick county, was judge of the city court before whom petitioner was brought when he was arrested. He testified before the commissioner that he appointed William C. Attwater as counsel for petitioner at that time. He testified further as follows:

"Q. Will you relate just what happened that caused you to arrive at that decision? A. At the time Trugillo was brought before me by one of the marshals I asked him if he had counsel or any attorney and he said he did not. I asked him if he had money or funds with which to employ counsel and he said he did not. I asked him if he wanted me to appoint an attorney to represent him and he said that he did. I asked him if he had any preference of attorneys or if he wanted anyone in particular. Something like that, in substance. He said he did. I asked him which one and he said that he would like to have Mr. Attwater appointed to represent him."

Petitioner was bound over to the district court for murder in the first degree. Attwater testified that he and his partner had several conferences with petitioner between the time when he was bound over and the time of his trial. Counsel makes much of the fact that the above appointment was by a judge of the city court and those accused of offenses are not arraigned in that court. He argues the appointment of Attwater in that court was not in any sense a compliance with G. S. 1949, 62-1304. It is true G. S. 1949, 62-1304 refers to arraignment in the district court. The fact remains, however, that petitioner as early in the proceedings as the preliminary hearing requested the appointment of Attwater and accepted Attwater's services at every stage. There was also testimony by petitioner's mother as to various instances when Attwater had represented petitioner and her before that. Before the commissioner petitioner after some questioning testified as to the appointment of counsel in the city court as follows:

"Q. I don't believe that answers my question, Jack. Did the court ask you if you wanted Mr. Attwater to represent you in this case? A. I don't recall them asking me that particular question. I do remember them asking me if there was any particular attorney I wanted appointed and I said I didn't know any other attorney other than Mr. Attwater."

When petitioner was arraigned in district court the following transpired:·

"The Court: State of Kansas vs. Jack Luis Trugillo.

Mr. Norton: He is in custody.

The Court: Who represents him?

Robert Allen: We were appointed in the City Court, Judge; he has not been arraigned in the District Court yet?.

The Court: You are with Wm. C. Attwater, aren't you?

Robert Allen: Yes, sir.

The Court: I will appoint Robert Allan and William C. Attwater to represent him up here."

Having represented petitioner at his preliminary hearing, Attwater continued to represent him at the trial, pursuant to the above appointment. Any irregularity in the appointment of Attwater seems to have been an afterthought of petitioner after having talked to his present astute counsel.

The above does not fully comply with G. S. 1949, 62-1304. We have held the provisions of the above statute were mandatory in order to give the court jurisdiction to accept a plea of guilty. It does not follow, however, that in a case such as this, where there was evidence that petitioner asked for the appointment of a particular attorney to represent him at his preliminary hearing, and such attorney was appointed, and did represent him, and the accused accepted his services through the trial, for the notice of appeal, and, in seeking a commutation of his sentence, that such failure rendered the entire proceedings void. The authorities cited and relied on by petitioner are all cases where there was a plea of guilty. None are cited where the services were accepted, as they were in this case. We hold the commissioner was correct in holding that this failure did not render the proceedings void.

Counsel for petitioner points out in a general way certain particulars in which counsel did not conduct petitioner's defense in the way he would have conducted it. He states the real point to be that the representation afforded the petitioner was not sufficient to constitute due process of law. Counsel for petitioner quotes what we said in *Miller v. Hudspeth,* supra. That was a case where one charged with murder in the first degree had been convicted and sentenced. While the appeal was pending we appointed a commissioner to hold hearings and take evidence and report whether he had been given sufficient representation as to constitute due process of law. We said, amongst other things:

".  .  .  It is the duty of defendant's counsel to determine what crime, the facts, in his opinion, establish and to advise his client accordingly. This is one of the definite purposes of having counsel."

"Certainly no representation of one charged with a felony should be a sham or constitute mere token service. The representation should be loyal and genuine."

The above statement is another way of stating the provisions of G. S. 1949, 62-1304. There it is provided amongst other things:

"It is the duty of an attorney appointed by the court to represent a defendant, without charge to defendant, to inform him fully of the offense charged against him and of the penalty therefor, confer with available witnesses, cause subpoenas to be issued for witnesses necessary or proper for defendant, and in all respects to fully and fairly represent him in the action."

The theory of counsel for petitioner may be stated as well as any other way by quoting him. He says:

"What took place in the trial? What were the acts and conduct of counsel? What was the true rule of law applicable to the charge against the defendant? These things are the things that should be considered; not whether counsel is appointed or selected. Let us not make criminal trials a game between the district attorney on the one hand and the defense counsel on the other. Let us accord to every man charged with crime a full, complete and fair trial; and in determining that determine whether or not the correct rules of law applicable to the charge were the matters considered by the court."

Actually counsel treats the action as though the question to be tried was whether counsel who conducted the defense conducted it in the manner he, that is, counsel for petitioner, would have conducted it from the vantage point of looking back on what has happened rather than looking ahead on what is about to happen. In the words of sports writers counsel for the petitioner is what is known as a "Monday morning quarterback."

The wife of petitioner and deceased had kept company before the marriage of petitioner to her. They had been engaged. The courtship was terminated and she and petitioner were married in November, 1947. They had one child. In October, 1948, she sued petitioner for divorce. Sometime about Thanksgiving, 1948, she started dating deceased again. This continued until the morning of the killing, which occurred at about 1:30 a. m. on January 9, 1949. Mrs. Trugillo and deceased and a group of friends had been dancing during the evening of the 8th. She was staying at her father's house and when she and deceased entered the lights were turned on and petitioner was standing in the room holding a gun in his left hand. The defendant told her to go into the room where her baby was

asleep, but instead she went into the kitchen, opened the ice box and removed two beers. While she was standing at the ice box she heard a shot and heard deceased call petitioner a vile name. Several additional shots were fired and there was a fight there in the house. The father of Mrs. Trugillo and other members of her family overpowered petitioner and took the gun away from him. Deceased died later in the hospital. It will be seen there was no doubt but that petitioner killed deceased. When arrested there at the scene of the killing petitioner had a stick of dynamite with a cap and fuse in his pocket.

Petitioner asks us to examine the record of his trial for murder and pass on whether it would have been wiser or more effective had his counsel at the trial conducted his defense in a manner other than that in which he did conduct it. In *Miller v. Hudspeth,* supra, we held the rule in such cases to be:

"12. *Criminal Law—Counsel—Duty to Client*—An attorney employed to represent a client is required to serve him loyally and to the best of his ability but there is no constitutional or statutory guarantee for the assistance of the most brilliant counsel.

"13. *Constitutional Law—Incompetency or Negligence of Counsel.* The incompetency or negligence of an attorney employed by a defendant does not ordinarily constitute grounds for a new trial and a *fortiori* will not be grounds for the application of the fourteenth amendment.

"14. *Attorneys—Conduct of Attorney Imputed to Client.* The concept of the rule stated in the preceding paragraph is that the lack of skill and incompetency of the attorney is imputed to the defendant who employed him, the acts of the attorney thus becoming those of his client and so recognized and accepted by the court, unless the defendant repudiates them by making known to the court at the time his objection to or lack of concurrence in them.

"15. *Criminal Law—Incompetency of Counsel—When Violation of Due Process.* If the attorney selected by a defendant is so incompetent or dishonest or so improperly conducts defendant's case as to amount practically to no representation, the defendant is prejudiced and thereby deprived of a fair trial and a court should grant relief by use of the writ of habeas corpus."

A proceedings in habeas corpus such as this is a collateral attack on the judgment and in order to be successfully maintained it must be made to appear that the judgment is void. (See *Miller v. Hudspeth,* supra.)

We shall not examine a record in a criminal case in such an action to ascertain whether counsel exercised the best judgment or used the most effective trial tactics. We adhere to the rule announced by us above in *Miller v. Hudspeth,* supra. There is nothing in this record to indicate but that the representation accorded petitioner

was full and fair. The decisions made by counsel in the trial of the action were those about which the most astute lawyers might differ. If we set aside convictions and sentences for such reasons there would never be an end to a criminal case. New counsel might very well file a new petition claiming counsel handling this proceeding was incompetent. "No thief e'er felt the halter draw, with good opinion of the law."

The commissioner's report is approved and the writ of habeas corpus is denied.