No. 42,970

RICHARD EUGENE HICKOCK and PERRY EDWARD SMITH, *Petitioners*, v.
TRACY A. HAND, Warden, Kansas State Penitentiary, *Respondent*.

(373 P. 2d 206)

Opinion filed July 7, 1962.

*Russell Shultz*, of Wichita, argued the cause and was on the briefs for the petitioners.

*William M. Ferguson*, Attorney General, and *J. Richard Foth*, Assistant Attorney General, argued the cause and *Charles Vance*, Special Assistant Attorney General, was with them on the briefs for the respondent.

The opinion of the court was delivered by

JACKSON, J.: This is an original proceeding brought by the petitioners for a writ of habeas corpus. The petitioners were each convicted of first degree murder on four counts in the district court of Finney county and the jury assessed the death penalty on each count. Just a year ago, petitioners' appeal from the above convictions came on for decision in this court. (*State v. Hickock & Smith*, 188 Kan. 473, 363 P. 2d 541.)

The court-appointed attorneys filed motions for rehearing as to the above decision, but immediately the court began to receive letters from the petitioners complaining about the court-appointed counsel. Soon the court was informed that counsel had been discharged.

In a short time petitioners were writing to various legal aid groups in Kansas seeking counsel. Letters reached the chairman of the legal aid committee of the Kansas Bar Association alleging grave injustices and need for counsel. The committee of the Wichita Bar Association also received letters and the two chairmen had some consultations. The Wichita committee suggested Russell Shultz, Esquire, of Wichita as a suitable person to investigate the situation. At this point, Mr. Shultz applied to this court for a delay in the disposal of the motion for a rehearing. The court, under

the circumstances, granted the delay with the request that Mr. Shultz file with the court a copy of his report to the Kansas Bar Committee.

The report was filed in the early fall, and seemed to have some basis for showing that petitioners Hickock and Smith had not received a fair trial. This showing disturbed this court and it was determined that we would appoint Mr. Shultz as attorney for petitioners to bring an original proceedings in habeas corpus.

It was necessary to bring the new proceeding in habeas corpus since it was thought there was a possibility of discovering matters outside of the record in the criminal proceeding.

The court was greatly pleased when the Honorable Walter G. Thiele, now on retirement after twenty-four years as an outstanding member of this court, consented to act as our commissioner in this matter and to take the evidence in this proceeding. It should be noted that Justice Thiele retired as Chief Justice being at that time the Justice with the longest period of continuous service on the court and therefore Chief Justice (State Constitution, Art. 3, sec. 2).

Justice Thiele was able to hold the required sessions in Finney county and at the penitentiary during the month of February of this year and the Commissioner's report is set out below. We have taken the opportunity of setting out certain authorities supporting the conclusions of law.

It will be noticed that Mr. Shultz has given of his time to represent the petitioners and argued this matter as shown above. Hence, we were surprised to receive a motion from petitioner Smith shortly before the hearing of this case in which Mr. Shultz was criticized. Petitioner Smith asked to be allowed to be represented by a certain inmate of the penitentiary instead of by Mr. Shultz. Only members of the bar are permitted to represent clients in this court. Therefore, the request was denied.

The Commissioner's report was as follows:

"REPORT OF COMMISSIONER

"Pursuant to the order of the Supreme Court of the State of Kansas made January 15, 1962, appointing Walter ·G. Thiele as Commissioner of the Court in the matter of the Application of Richard Eugene Hickock and Perry Edward Smith for a writ of habeas corpus, for the purpose of hearing the evidence in support of the application and against the granting thereof, and making suggested findings of fact and conclusions of law, your Commissioner did, after taking the required oath, and pursuant to the above order, commence

hearing the evidence offered by the petitioners in support of their application and by the respondent in opposition thereto, at Garden City, Kansas, on February 13, 1962, adjourned that hearing and heard further evidence at the Kansas State Prison, in Lansing, on February 15, 1962, and adjourned that hearing and completed the taking of testimony at Garden City on February 19, 1962, at which time the petitioners and the respondent rested and submitted the matter to the Commissioner, who then ordered the petitioners and the respondent to file with him their suggested findings of fact and conclusions of law on or before March 5th, 1962, and if either party deemed it necessary to comment on the proposed findings or conclusions, report of that to be submitted on or before March 10, 1962, which order has been complied with by the petitioners and by the respondent. Consideration of the testimony and of the documentary evidence submitted has resulted in the following suggested findings of fact and conclusions of law.

## "FINDINGS OF FACT.

### "I.

"On March 29, 1960, as the result of a joint trial, Richard Eugene Hickock and Perry Edward Smith were each convicted on four counts charging murder in the first degree, and were later sentenced to death and ordered committed and delivered to the Warden of the Kansas State Penitentiary for execution of the sentences against them and they were taken to the Penitentiary. On appeal to the Supreme Court the judgments were affirmed in an opinion filed July 8, 1961, reported in *State v. Hickock & Smith*, 188 Kan. 473, 363 P. 2d 541.

"On December 3, 1961, Hickock and Smith filed their joint application in the Supreme Court for a writ of habeas corpus to secure their release from the custody of the Warden of the Kansas State Penitentiary. On January 15, 1962, the Supreme Court made its order appointing Walter G. Thiele its Commissioner in the case to hear the evidence, make suggested findings of fact and suggested conclusions of law, and report to the Court, and this Report is in conformity with that order.

### "II.

"The evidence and the circumstances of its taking, included the following:

"At the commencement of the hearing, counsel for the petitioners and counsel for the respondent agreed to the introduction in evidence of

(a) The complete record of the trial in the District Court of Finney County of the criminal action of the State of Kansas v. Richard Eugene Hickock and Perry Edward Smith, Defendants, No. 2322, and the transcript of the record of the proceedings had in the District Court and filed in the office of the Clerk of the District Court. Subsequently, by stipulation of the parties, there was received in evidence (b) a transcript of the proceedings had before M. C. Schrader, Judge of the County Court of Finney County, to acquaint the defendants with the charges against them and to give them the opportunity to have a preliminary hearing; (c) a transcript of the proceedings had in the Finney County District Court on the hearing of the defendants' motion for a new trial at which time the motion was overruled and the defendants sentenced; (d) certain photographs, newspapers, excerpts from newspapers on reproduc-

tions thereof, letters and copies of letters admitted for restricted purposes; and ( e ) the oral testimony of witnesses at Garden City and the Kansas State Penitentiary, all of which has been transcribed.

## "III.

"At the opening of the hearing, the Commissioner called attention of the petitioners to the fact their petition does not specifically and with particularity allege why they contended they had not been offered a constitutional fair trial and asked for an outline of what they proposed to show and was informed by counsel that he was not certain what might be shown and it was a matter of calling witnesses to determine whether there had been a fair trial, and counsel was then and at later times informed he would have every opportunity to present any evidence that bore on the question. The oral evidence was then received. Because of the above stated facts, much testimony was received covering matters considered by the Supreme Court in its opinion on the appeal from the conviction as it appears in *State v. Hickock & Smith*, supra, or which should have been urged on appeal for any bearing it might have on the fundamental question as to whether petitioners had been afforded a constitutional fair trial. At the concluding second hearing in Garden City, petitioners stated they had nothing further to add. The respondent then offered some rebuttal testimony and rested. The Commissioner then stated that strict order and proof had not been followed and that if petitioners or the respondent had any further evidence it would be received. After recess granted for their consideration of the situation, both the petitioners and the respondent rested except for some newspaper copies to be furnished under stipulation, and the Commissioner took the cause for consideration and determination.

## "IV.

"The homicides were committed on November 15, 1959, and immediately thereafter there was considerable feeling of fear and danger of further crimes of similar nature. On December 30, 1959, the petitioners were arrested in Las Vegas, Nevada, and thereafter the above feeling dissipated to a great extent. The petitioners were returned by automobile to Garden City, Kansas, arriving there about 6 o'clock p. m. on January 6, 1960. On the afternoon of that day a crowd of about three hundred people had congregated on the court house lawn. The Jail was in the upper part of the courthouse. By the time of the arrival of the petitioners the crowd had dwindled to about twenty-five citizens and a number of newspaper people. Various witnesses described the crowd as curious, congenial or jovial and that there were no demonstrations against the petitioners. There is no evidence as to conditions between January 6, 1960, and the date of the trial which began on March 22, 1960. At the trial there were no demonstrations against the petitioners or otherwise and the trial was described as orderly. The petitioners' inferred, rather than specific, complaint that there was an unfair and hostile atmosphere toward the petitioners from the date of their arrival and during the trial is contrary to the record, and not sustained.

## "V.

"After the arrest of the petitioners in Las Vegas, Nevada, and before they were returned to Kansas, the petitioners made confessions, admissions and statements to the officers in the course of which they detailed their actions in committing the homicides, and the disposal they had made of the murder weapons and other articles used by them, and of a radio and pair of binoculars taken by them from the premises where the homicides were committed. It was not contended at the trial, nor was it contended at the instant hearing, that the confessions, admissions and statements were not true or that they were obtained by duress, threats, promises of leniency or other improper means. The truthfulness of the confessions was corroborated by the finding of shotgun shells, tape and rope at a place indicated by the petitioners, of the shotgun and knife at another place indicated by the petitioners and by the recovery of the radio and binoculars from the person to whom petitioners said they had sold them.

## "VI.

"On January 7, 1960, the petitioners were taken before M. C. Schrader, Judge of the County Court of Finney County, to acquaint them with the charges filed against them. The warrant against Hickock was read to him and he was asked if he understood the charges against him, and was told the purpose of bringing him before the court was formally to acquaint him with the charges and to give him a preliminary hearing if he so desired; that a preliminary hearing is one in which the state must produce evidence to cause the court to find that a crime had been committed and there was probable cause for believing the proper party had been charged, and if so proved, to bind him over to the district court for trial, and if the state failed to make such proof, the defendant may be discharged. Hickock was asked if he was prepared at the time to elect whether he wished a preliminary hearing or wished to waive, and he answered that he would waive preliminary hearing. He stated the county attorney had advised him of his right to counsel and he understood he had such right.

"Similar proceedings were had with respect to Perry Edward Smith, except there was no reference to counsel, and he also waived a preliminary hearing.

## "VII.

"Petitioners were brought before the District Court of Finney County for arraignment on January 8, 1960. At the hearing Hickock stated he was twenty-eight years of age, was asked if he had legal counsel and answered he did not and had no funds to employ counsel and that he desired the court to appoint counsel for him; that he was not acquainted with any local attorney. The trial court appointed Mr. Harrison Smith to represent Hickock. Immediately following Perry Edward Smith stated he was thirty-one years of age; that he had no legal counsel and no funds to employ any and that he desired the court to appoint counsel for him, and that he did not know any local attorney, and the trial court appointed Mr. A. M. Fleming as his counsel.

"At the times of their appointment, Harrison Smith had been an admitted practicing attorney for twenty-two years, and A. M. Fleming had been an admitted practicing attorney for thirty-nine years.

### "VIII.

"After their appointment as counsel as found in Finding VII, the county attorney made available to them all of the evidence then available to the state, including a written form of confession of Perry Edward Smith, which was not signed by him and which was not introduced in evidence at the later trial, and the written confession of Hickock, which was introduced at the trial. The attorneys also had for their use whatever their clients said to them.

"Petitioners' contention that their counsel were remiss and did not competently and adequately represent them in that counsel did not, after their appointment, seek to have a preliminary examination for petitioners, cannot be sustained. The petitioners were fully informed as to their rights to have a preliminary hearing by the judge of the county court, stated they understood the explanation, and each was aware of what he was doing. Assuming a preliminary hearing could have resulted from any action taken by the court appointed counsel, no purpose would have been served for counsel was fully informed of the proof then available to the state, which was all that a preliminary hearing could have disclosed.

### "X.

"Petitioners' contention that their counsel were remiss and did not completely, fully and ably represent them, is based on their own testimony that except at the times they were together in open court in connection with hearings preliminary to the trial, counsel had consulted with them not more than four times concerning their defense. Other testimony shows that counsel consulted with their clients separately and on occasions together, fifteen or more times not counting appearances in court, and discussed with them the matters of change of venue, joint or separate trials, and their defenses. The conferences were each more than thirty minutes in time and one conference between Hickock and his attorney lasted about four hours. Petitioners stated they had had conferences about change of venue and joint trial. Your Commissioner believes the testimony last mentioned and finds that the petitioners' contention is not sustained by the evidence.

### "XI.

"Petitioners' contention that their counsel did not competently, fully and ably represent them and were remiss in their duty to them in not seeking a change of venue is contrary to the weight of the evidence and is not sustained. At conferences between petitioners and their counsel there was discussion of the fact that there had been a series of sermons and speeches in pulpits and public places in Finney County decrying against capital punishment; that the senior Clutter had been engaged in some civil litigation for damages in which he did not prevail; that each of counsel was well known in Finney County, and that these conditions might not prevail in some other county to which the case might be sent, and it was the opinion of counsel that a fair trial would be had in Finney County. As a result of such conference, it was agreed that no change of venue should be sought. Hickock's father, when informed of the situation agreed thereto. There is no evidence that counsel did not exercise their best judgment in the situation.

## "XII.

"Petitioners' contention that their counsel was remiss and did not competently, fully and ably represent them in not demanding separate trials for them is based solely on their own testimony that they had not agreed to be tried jointly. The facts are the petitioners were charged jointly in one information and that on February 6, 1960, a severance had been granted and the case against each defendant set for March 22, 1960, with the trial of Perry Edward Smith to be held first. On March 1, 1960, the state asked for and received authority to endorse on the information the names of twelve persons, including Richard Eugene Hickock and Perry Edward Smith, as state's witnesses. At a conference later between the petitioners and their counsel, the possibility that one of the accused defendants might be called and might be a potential witness against the other was discussed. In view of the setting of the cases, Harrison Smith was fearful that when Perry Edward Smith was tried first he might be a potential witness against his client Hickock. Fleming consulted his client who replied that they were charged together and should be tried together. With knowledge of the petitioners and their respective counsel as to the nature of the state's evidence to support the allegations of the information, a joint trial was agreed on and the trial court was so advised. Hickock's father was also advised and agreed. The petitioners' contention is contrary to the testimony and is not sustained.

## "XIII.

"On March 2, 1960, on motion of defendant petitioners the trial court quashed the panel of jurors then existing and called a new panel of one hundred fifty and no complaint is made thereof. Defense counsel made an intensive examination into the background of each of the potential jurors in preparation for trial. At the trial no stenographic record was made of the *voir dire* examination, it not being required by statute. The practice followed in Finney County District Court and in other district courts of that section of the state was that such a record is not made except on request. There was no request made. As is found later, all of the jurors who served at the trial, were called as witnesses in the present hearing and were examined. It is found that the petitioners were not prejudiced by the failure of their counsel to demand that a stenographic record be made of the *voir dire* examination, nor because such a record was not made.

## "XIV.

"At the trial in the district court forty-five prospective jurors were examined, some of whom were challenged for cause and excused. The state exercised three peremptory challenges and the petitioners seven, leaving twelve as the regular panel. Six more men were called into the box to obtain two alternate jurors, and two were chosen. Their services were not required and they are not noticed further. Petitioners contend that the jury panel which tried the criminal action included some who should have been excused under G. S. 1949, 62-1409, because they had formed or expressed an opinion on the issues. In support of that contention petitioners offered in evidence a copy of the "Garden City Telegram" on March 23, 1960, which contained an article

headed "Here's Jury Rundown," listing each juror, stating who he was, and listing single statements attributed to some of those named. The article's content is obviously incomplete. It is not noticed further for no witness was produced to testify to the accuracy of the matter contained or that the statements attributed to jurors in the articles were in fact made.

"In the present hearing, petitioners called as witnesses all of the members of the panel of the jury at the trial and examined each not only as to questions asked him and answers made at the trial, but also as to whether, at the time of the trial, any one of them had formed or expressed any opinion as to the guilt or innocence of the petitioners (defendants), or for any other reason was not a fair and impartial juror. It is found from the evidence adduced that although the jurors had some knowledge of the crimes charged, and some of them knew the senior Clutter, no one of them had formed or expressed an opinion as to the guilt or innocence of the accused, or either of them, prior to the close of the trial, and each one asked the question stated he was able to render a fair and impartial verdict on the evidence introduced, and did so. There was no testimony disputing the answers made at the hearing before the Commissioner. It is found that the contention one or more of the jurors was disqualified is not sustained by the record.

"XV.

"No complaint was made that at their trial the accused petitioners were deprived of calling any witness they wished, or that they were deprived of asserting any defense they or either of them had and they do not now contend that they did not have a full and complete hearing at their trial except in the two following instances. Petitioner Hickock testified he believed the issue of his sanity should have been presented. The answer is that it was. See State v. Hickock & Smith, supra. Petitioner Perry Edward Smith testified he told his attorney he felt under duress 'not under duress of any physical violence but under mental duress.' It is not made to appear just what the statement meant or what could have been asserted in the trial court with respect thereto.

"XVI.

"At the hearing before the Commissioner, no complaint was made that any competent evidence was available and not asserted by counsel for petitioners.

"XVII.

"There was no testimony of any practicing attorney or of any person learned in the law that either of the court appointed attorneys A. M. Fleming and Harrison Smith, did not completely, ably, competently and adequately represent their clients or that they or either of them committed any act, either of commission or omission, to the prejudice of their respective clients.

"XVIII.

"In the manner provided by statute, counsel for the defendants perfected an appeal from the judgments of conviction and sentences thereunder to the Supreme Court of the State of Kansas. Harrison Smith, attorney for Hickock, became the County Attorney of Finney County in January, 1961, and shortly thereafter resigned as the court appointed attorney for Hickock and Dale H. Corley, an attorney of Garden City, was appointed in his stead. There is no

complaint that either Corley as attorney for Hickock or Fleming as attorney for Perry Edward Smith were remiss in any manner in prosecuting the appeal.

## "XIX.

"The Commissioner has, in addition to the specific complaints above considered, examined and considered the entire record cumulatively and it is found that the whole record discloses no facts that warrant any conclusion of fact that the petitioners or either of them were deprived of a fair trial or were denied due process of law under the Constitution of the United States or the Constitution and laws of the State of Kansas.

## "CONCLUSIONS OF LAW

### "I.

"In a proceeding for a writ of habeas corpus, it is the burden of the applicant to establish a ground which warrants the relief he seeks."

(*Scott v. Hudspeth*, 171 Kan. 320, 232 P. 2d 464, syl. ¶ 4. *Hightower v. Hand*, 186 Kan. 377, 379, 350 P. 2d 31.)

### "II.

"Due process under the Fourteenth Amendment to the Constitution of the United States does not require that a prospective juror in a criminal case be totally ignorant of the facts and issues involved, and the fact he may have heard thereof and formed a tentative opinion is not sufficient to rebut the presumption of his impartiality if he can put aside his impressions and render a verdict based on the evidence presented at the trial."

(*State v. Spaulding*, 24 Kan. 1; *Irwin v. Dowd*, 366 U. S. 717, at 756, 6 L. Ed. 2d 751, 81 S. Ct. 1639.)

### "III.

"G. S. 1949, 62-1409, providing it shall be good cause for challenge to a juror that he has formed or expressed an opinion on the issue or any material fact to be tried, has no application to a prospective juror who testifies that he has not formed or expressed such an opinion."

(*State v. Hooper*, 140 Kan. 481, 497, 37 P. 2d 52; *State v. Spaulding*, 24 Kan. 1.)

### "IV.

"Counsel appointed by the district court to represent an indigent defendant in a criminal action, owes to his client the duty to act diligently, faithfully and honestly in behalf of the client, but where the proof shows only a situation where honest exercise of discretion is involved, it may not be held counsel was remiss or that he did not fully and adequately represent his client in the absence of proof of bad faith."

(*Miller v. Hudspeth*, 164 Kan. 688, 192 P. 2d 147; *Trugillo v. Edmondson*, 176 Kan. 195, syl. ¶ 2, 270 P. 2d 219; *Cox v. Hand*, 185 Kan. 780, 347 P. 2d 265.)

### "V.

"The fact that two persons, jointly charged in one information of the commission of crimes in which both parties participated were, under the circumstances set forth in the findings of fact, tried together, does not entitle either, as a matter of law, to a writ of habeas corpus."

(*Levell v. Simpson,* 142 Kan. 892, 893-894, 52 P. 2d 372; *In re Light,* 147 Kan. 657, 78 P. 2d 23.)

"VI.

"No ground has been established for the issuance of a writ of habeas corpus on the part of either of the petitioners, and the writ prayed for should be and is denied.

"The Commissioner further reports that he has delivered to the Clerk of the Court the transcript of the record in *State v. Hickock,* No. 42,068, in this court, the transcript of the testimony heard by him at Garden City on February 13th and February 19th, 1962, the transcript of the testimony heard by him at the Kansas State Penitentiary on February 15th, 1962, the transcript of proceedings before M. C. Schrader, Judge of the County Court of Finney County, when the accused petitioners were given an opportunity to have a preliminary hearing, the transcript of the proceedings had in the District Court of Finney County on the motion for a new trial and the entry of judgment against the defendants, the exhibits and documents received in evidence and delivered to him, and the praecipe for subpoenas, the subpoenas and returns thereon, and the statutory oaths of the court stenographers.

"A statement of the costs and expenses, so far as they have come to the attention of the Commissioner, will be separately reported at a later date.

"Your Commissioner asks that his Report be examined and approved.

"Dated at Topeka, Kansas, March 20, 1962.

/s/ Walter G. Thiele,
Commissioner.

"AMENDED REPORT OF COMMISSIONER.

"Comes now Walter G. Thiele, the Commissioner heretofore appointed in the above entitled cause, and shows that on March 20, 1962, he filed his Report of proceedings theretofore had. On the same date, Russell Shultz, attorney for the petitioners, mailed to C. Richard Foth, Assistant Attorney General, attorney for the respondent, twenty-two exhibits, all being excerpts from the Garden City Telegram, and asked that Mr. Foth examine them and advise him of any objections, the ones not objected to to be filed with the Commissioner. A copy of Mr. Shultz' letter to Mr. Foth was delivered to the Commissioner who directed Mr. Foth to reduce to writing any objections he might have to the exhibits or any of them, and to deliver all of the exhibits and any objections made to the Commissioner for consideration. That direction has been complied with, and the exhibits and objections, which have been filed with the Clerk of the Court, have been examined and considered by the Commissioner, who reports to the Court as follows: The exhibits above referred to include twenty-two excerpts from the Garden City Telegram. There is no proof as to the truth and accuracy of the statements contained in the exhibits and the respondent objects to their being received in evidence if the purpose is to prove the truth of the statements. That objection is sustained. The exhibits are received, however, for the purpose of determining whether

their publication deprived the petitioners of a constitutional fair trial. The result is that the statement in Finding IV of the Report of the Commissioner filed March 20, 1962, that 'There is no evidence as to conditions between January 6, 1960, and the date of the trial which began on March 22, 1960,' is no longer accurate, and your Commissioner suggests that the quoted statement and the following portion of Finding IV be stricken out and the following substituted therefor.

"AMENDMENT TO FINDING IV.

"There is no evidence as to conditions between January 6, 1960, and the date of the trial which began on March 22, 1960, except twenty-two excerpts from the Garden City Telegram of which eleven appeared in January, 1960, issues, five in February, 1960, issues and six in March, 1960, issues. There was no evidence as to how widely the Telegram was circulated. The various excerpts are in the nature of a running account of what transpired from the time of the arrest of the petitioners in Las Vegas, Nevada, their confessions, their return to Garden City, their waivers of preliminary hearings, their arraignment in the district court, the appointment of counsel for them and of various matters in the district court preceding the trial which commenced on March 22, 1960. A reading of the excerpts discloses a factual recital, and there is no inflammatory language tending to prejudice the petitioner defendants in their right to a fair and impartial trial. The Commissioner further finds that the publications above mentioned and their effects on a constitutional fair trial must be measured also by the other circumstances preceding and during the trial and set forth in other findings. Aside from the newspaper publications there is no evidence of any demonstrations against the petitioner defendants either preceding or at the trial, and the trial itself was described as orderly. The petitioners' inferred, rather than specific, complaint that there was widespread unfair, hostile and prejudicial atmosphere toward the petitioners from the date of their arrival in Garden City and during the trial, is contrary to the evidence and is not sustained.

---

"Your Commissioner asks that the Amended Report be examined and approved and that the suggested Amendment to Finding IV of his original report be ordered made.

"Dated at Topeka, Kansas, this 4th day of April, 1962.

"/s/    Walter G. Thiele,
Commissioner"

We may observe that in an original proceedings where a commissioner has been had to take testimony, the findings of the commissioner upon the testimony are advisory only and the ultimate weight of the evidence rests with the court. (*State, ex rel., v. Buchanan,* 142 Kan. 515, 51 P. 2d 5; *State, ex rel., v. Harvey,* 148 Kan. 166, 80 P. 2d 1095; *State, ex rel., v. Schmitt,* 174 Kan. 581, 585, 258 P. 2d 228.)

We have fully considered the whole record before the commissioner and it is our firm conviction that the commissioner's report gives an accurate summary of the testimony taken by him and that his conclusions of law based on the record are entirely correct.

Therefore, the findings of fact and conclusions of law of our commissioner are hereby approved, adopted and made a part of this opinion.

We cannot help but point out one matter in the argument of the petitioners which seems overstressed. The statement is made that all jurors who did not believe in capital punishment would be challenged and removed from the jury. Yet, counsel for petitioners may well have thought that even those who said they were not against capital punishment might well be influenced by the campaign of the churches in Finney county against the death penalty. Certainly, the attorneys cannot be said to be deceitful if they placed some hope in such a result.

The newspapers of Kansas did have considerable coverage of the crime and the trial. In the United Kingdom such coverage would, as we understand it, be subject to contempt proceedings, which, at the present time, our constitutional law forbids. As in any sensational case of this kind, the newspapers all over the state carried the stories and there would be question about jurors in any county in Kansas as feeling was not limited to Finney county. We do not think it was unreasonable for the court appointed counsel to believe that defendants could have a fair trial in Finney county—in fact, we believe they did have a fair trial.

To requote the commissioner: No ground has been established for the issuance of a writ of habeas corpus on the part of either of the petitioners, and the writ prayed for should be and is denied. It is so ordered.