No. 45,249

STATE OF KANSAS, *Appellee,* v. WILLIAM MILO WRIGHT, *Appellant.*

(453 P. 2d 1)

Opinion filed April 12, 1969.

*William B. Stokes,* of Salina, argued the cause and was on the brief for the appellant.

*Kent Frizzell,* Attorney General, and *Bill Crews,* County Attorney, were on the brief for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a conviction of forcible rape.

The sufficiency of the evidence to sustain the conviction is not challenged. We need not, therefore, present in detail the revolting facts surrounding the forcible ravishing of a young girl twelve years of age.

Limited pertinent facts will be presented as we discuss the specific issues to which they apply.

The appellant first contends that it was nineteen days after the motion for a new trial was overruled before he was sentenced, con-

trary to the provisions of K. S. A. 62-1723 which, after providing for disposing of a motion for new trial, states:

". . . If the motion for a new trial is overruled, sentence shall be imposed within five days. . . ."

In *State v. Nelson*, 200 Kan. 411, 436 P. 2d 885, we considered a similar contention and held:

"The provision of K. S. A. 62-1723 relative to sentence being imposed within five days if a motion for new trial is overruled is merely *directory*, not mandatory nor jurisdictional, and a valid sentence may be imposed within a reasonable time thereafter." (Syl. 1.)

We also stated in the *Nelson* case that the purpose of the time limitation was to prevent prolonged, unreasonable delay in the sentencing of a defendant after his motion for new trial was overruled. To hold that the statute is anything but directory could well affect the propriety of the sentence. The circumstances in the case before us present a fair example of necessity for additional time.

Immediately after the motion for a new trial was overruled, the trial court proceeded to sentence the defendant. The question of sentence under the habitual criminal act then arose. The court expressed a doubt as to whether the crime of conspiracy, presented as a previous conviction, was a felony under the laws of the state of Iowa where the previous conviction took place. The matter of sentencing was continued for further evidence. The above proceedings took place on October 4, 1967, and the final sentence was pronounced on October 23, 1967.

Under the facts and circumstances presented we cannot say that the delay in the sentencing was unreasonable.

The defendant lays great stress on the contention that he was in fact denied the constitutional right to counsel because of incompetency of his trial counsel. Different counsel was appointed for the appeal.

Defendant's attorney was appointed by the trial court at defendant's request. He had some thirty-five years of general experience in the practice of law. It would appear, however, that counsel was not familiar with K. S. A. 60-421, contained in the new rules of evidence, placing limitations on evidence of previous convictions of crime as affecting the credibility of a witness.

When the appellant took the stand to deny his guilt, his counsel questioned him as to his criminal record with the evident intent of taking the sting from such facts when he was cross-examined by the

prosecution. However, such cross-examination would not have been proper under the provisions of K. S. A. 60-421. We quote the direct testimony of appellant:

"Q. Now, you have a previous record, don't you?
"A. Yes, sir.
"Q. You have had several altercations with the police?
"A. Yes, sir.
"Q. Had a jail breaking episode when you were just a boy?
"A. Yes, sir.
"Q. And charged with burglary and a few offenses—
"A. (interrupting) Yes, sir.
"Q. —of that nature? You understand, of course, that all of that is going to be brought up by the County Attorney on cross-examination and the jury is going to be fully advised of all of your past misdeeds?
"A. Yes, sir.
"Q. Notwithstanding that, though, are you saying under oath here and now that you are not guilty of the charge herein this case?
"A. Yes, sir."

The prosecution on cross-examination pressed for details of appellant's previous crimes and asked if appellant had not been charged with forcible rape in 1964. At this point appellant's counsel objected and, regardless of the direct examination, the trial court stopped the entire line of examination and directed the jury to disregard the question and any inference that might be drawn from it. Again, before delivering the written instructions, the trial court orally instructed the jury that "any evidence of the prior criminal record of the defendant in this case is to be disregarded by you in reaching your decision in this case." If the jury followed the instructions of the court no prejudicial error resulted. We must assume that it did.

This was the only slip on the part of counsel for appellant and it resulted in nonprejudicial error under the court's instructions. In all other respects counsel showed unusual diligence and ability, particularly on the motion for new trial when he even went so far as to accuse himself of incompetency.

We doubt if one of the best lawyers ever laid claim to having tried a case with absolute perfection. Any good lawyer, having finished the trial of a case, can think of errors that he could have avoided and also think of moves that might have improved his client's chances. New trials cannot be granted for such reasons. An accused cannot be guaranteed a lawyer that will present a perfect trial. He can only be guaranteed a trial free of prejudicial

error. In *Hicks v. Hand,* 189 Kan. 415, 417, 369 P. 2d 250, the court stated:

"The guarantee of effective assistance of counsel does not guarantee the most capable or learned counsel possible, but only a competent and reputable member of the bar. (*Miller v. Hudspeth,* 164 Kan. 688, 192 P. 2d 147; and *Trugillo v. Edmondson,* 176 Kan. 195, 270 P. 2d 219.) . . ."

If convictions were to be set aside because counsel stated on motion for a new trial that he had overlooked or misconstrued a statute, or after trial thought of some move that might have been beneficial to the accused, it is doubtful if many criminals would be placed in confinement.

The appellant objects because the trial court did not instruct in writing regarding prior offenses citing *State v. Roth,* 200 Kan. 677, 438 P. 2d 58 in support of his contention. It will suffice to suggest that the *Roth* case requires written instructions when evidence of prior offenses are admitted, not when the jury is instructed to disregard such evidence.

The appellant contends that he was denied due process because one of the jurors fell asleep during the trial and that another juror was hard of hearing. At the hearing on the motion for a new trial, counsel for the appellant examined a large number of the jurors close to the point of harassment but failed to establish facts supporting either contention. The trial court's conclusion that the evidence did not support the contentions disposes of this issue.

A careful examination of the record discloses no trial errors that would justify the granting of a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.


FONTRON, J., dissenting: I am reluctant to disagree with the judgment of my learned colleagues in this case, for I find no pleasure in stigmatizing this defense as inadequate. However, under the facts disclosed by the record no other course seems open.

Kansas courts for many years have recognized the constitutional right of a defendant charged with felony to be represented by counsel. They have realized, also, that the right was not a barren or an empty one, but one which presupposed that counsel would be competent and capable of conducting a genuine defense on behalf of the accused. (*State v. Calhoun,* 194 Kan. 378, 399 P. 2d 886; *Smith v. State,* 199 Kan. 293, 429 P. 2d 103.)

However the line of demarcation between adequate and inadequate representation has never, to my knowledge, been sharply or distinctly drawn. Nor is it probable that guide lines can ever be fashioned with sufficient clarity to distinguish in every case, the effective from the ineffective counsel; the competent from the incompetent; or the diligent from the indifferent.

Although the decisions of this court abound in learned phrases attempting to define what is, and what is not, capable and competent representation, our language has been general in character, painted across the pages with a broad brush. The question of what is adequate representation by legal counsel remains largely a factual one in each individual case (*Sims v. United States*, 272 F. Supp. 577); the question must be resolved, for the most part, on a case by case basis.

In the great majority of cases reaching this court, where incompetency of counsel has been alleged, it has been discovered that the claim was frivolous or insubstantial. The present case, however, has deeper overtones and presents a much more serious departure from the norm of legal competence than most cases where the claim has been made. The record of *this* trial cannot easily be brushed aside.

This record, which is very scant, reveals that from the very beginning of the trial the defendant's past record was called to the jury's attention by his own counsel. In the *voir dire* examination, questions asked of the panel by defense counsel inferred that his client had a criminal record.

This indiscretion was compounded in the opening statement for the defense when counsel spoke to the jury in these words:

"Now, we are going to call Mr. Wright to the stand. Now, remembering when I talked to you this morning that I asked you at that time if you would be prejudiced against Mr. Wright if the evidence disclosed that in the past he had been indiscreet and had been a law violator and had what is called a bad record. Now, you will hear some more about his bad record."

The court's majority opinion correctly quotes all of defendant's direct examination shown by the record. Its opinion omits, however, the defendant's cross-examination by the state which immediately followed:

"Q. Mr. Wright, your testimony to this jury is simply this, that you are telling the truth and the other witnesses involved in this case are all lying to this court and this jury, is that correct?
"A. Yes, sir.
"Q. Mr. Wright, your attorney has discussed very briefly your criminal

record. Do you want me to tell the jury more about the criminal record?

"A. Well, I've been in a lot of trouble.

"Q. Tell the jury what kind of trouble you have been in.

"A. I broke jail, that's way back in the 30's, and I went to the reformatory, and I went to the penitentiary.

"Q. To the penitentiary in Iowa, did you?

"A. In Iowa.

"Q. What was that for?

"A. A conspiracy.

"Q. Have any other scrape with the law?

"A. Oh, I've been in jail a lot of times.

"Q. Been in trouble in Nebraska, have you?

"A. Yes, in Nebraska, and I was over here, I believe, in '64, wasn't it?

"Q. Do you want to tell the jury about the time you spent in the Saline County Jail in 1964?

"A. Yes, you put a rape charge on me which I wasn't guilty of.

"Q. A rape charge?

"A. You put a rape charge on me and you held me for eight and one-half months and never took me to court.

"Q. Were you charged in this court by information on or about August 13, 1964, of unlawfully, feloniously and forcibly attempting to ravish and carnally know a female person under the age of eighteen, to-wit, one Rose June Parks.

"A. Repeat.

"Q. Were you charged by information in the District Court of Saline County, Kansas, on or about the 13th day of August, 1964, with having on the 5th day of July, 1964, in said County of Saline, State of Kansas, unlawfully, feloniously and forcibly attempting to ravish and carnally know a certain female person under the age of eighteen years?"

At this point defense counsel objected to the county attorney's reference to a charge on which there had been no conviction. This objection was sustained and the jury was orally instructed to "disregard *the last question* or any inference that might be drawn from it." (Emphasis supplied.)

It is my opinion that the systematic injection of the defendant's past criminal record into the trial of this case, accomplished by defendant's own counsel, exhibits a shocking lack of competency on the latter's part. To counsel's credit it must be said that he later acknowledged during the trial that evidence of defendant's previous convictions were brought into the case *through incompetent counsel.*

This admission of incompetency was later repeated at the hearing on the defendant's motion for new trial. From counsel's argument at that hearing it appears he was not familiar with the provisions of K. S. A. 60-422 and 60-455, enacted some four and one-half years previously, but was laboring under the misconception that the de-

fendant's prior record could be brought out by the state on cross-examination to test credibility. This frank admission rebuts, without question, any contention which might be made that defense counsel was simply engaging in a bit of clever trial strategy in apprising the jury of his client's unsavory record.

It seems incredible that an attorney deemed competent by the court to undertake the defense of an indigent accused, should long be ignorant of statutes which are of such significance to members of the trial bar. Particularly would this seem unlikely when the statutes have been on the books for more than four years, and when numerous seminars have been held throughout the state to acquaint lawyers with changes made in trial procedure by the Code of Civil Procedure. That defense counsel was totally unaware of the existence and effect of the statutes when he arrived in court to defend his client shows, at the very least, a lack of diligence on his part in preparing for trial.

It is true, as stated in the majority opinion, that the able trial judge instructed the jury orally, immediately before giving his written instructions, that evidence of the defendant's prior criminal record was to be disregarded in arriving at a decision. However it is unrealistic, in my view, to presume with complacency that the instruction cured the error beyond danger of prejudice. It might be just as logical to assume, under the circumstances of this case, that the instruction served to re-emphasize the defendant's distasteful record so conspicuously displayed before the jury.

Although this court has often said that the jury may be presumed to follow the trial court's instructions to disregard evidence, there are areas, I believe, in which the possibility of prejudice may be so strong as to negative such a presumption. In speaking on this subject through his concurring opinion in *Krulewitch v. United States*, 336 U. S. 440, 453, 93 L. Ed. 790, 69 S. Ct. 716, Mr. Justice Jackson said:

".  .  . The naive assumption that prejudicial effects can be overcome by instructions to the jury  .  .  . all practicing lawyers know to be unmitigated fiction.  .  .  ."

In *Bruton v. United States*, 391 U. S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the Supreme Court pointed out the fallibility of such an assumption when applied to the admission into evidence, at a joint trial, of the confession of one defendant which has inculpated

his codefendant. In deciding that prejudicial error had been committed despite cautionary instructions, the court declared there were some contexts in which the risk that the jury would not, or could not, follow instructions was so great and the consequence of failure so vital to an accused that the practical and human limitations of the jury system could not be ignored. The effect, continued the court, was the same as though the limiting instruction had not been given at all.

While the language in *Bruton* was used in the context of a confession which implicated a codefendant, its logic would appear to be equally applicable to the situation which confronted the defendant here, where his unsavory past was opened up and flaunted before the jury in considerable detail. It is impossible, of course, to say whether the jury did or did not ignore the defendant's past, but it would seem reasonable to assume the jury could not put it wholly out of mind.

The majority of this court would infer that defense counsel's injection of his client's prior record into the case was his "only slip." Possibly that is true, but it was a continuing and poisonous "slip" nonetheless. The majority opinion goes on to say that "In all other respects counsel showed unusual diligence and ability . . ." This is, indeed, an odd statement to make in view of the fact that the record contains no part of the state's evidence or what transpired during presentation of the state's side of the case.

Neither does the record disclose whether any witnesses were subpoenaed or used on behalf of the defendant. The only defense evidence shown in the record consists of those parts of the defendant's testimony, on both direct and cross-examination, which are set out verbatim in the majority opinion and in this dissent. Thus, there is no way to determine whether counsel displayed "unusual diligence and ability" at the trial except by reference to the transcribed testimony of the defendant, himself.

An astonishing statement is found on page 6 of the state's brief, where it is said:

". . . The matter of his [defendant's] prior record was introduced by the appellant [defendant] and in fact was the sole extent of his direct examination. . . ."

If this startling statement be true, and I find it nowhere denied,

then the only evidence offered by the defendant in defense of his innocence is found in his answer to a single question put to him on direct examination:

"Q. Notwithstanding that [his past record], though, are you saying under oath here and now that you are not guilty of the charge herein this case?

"A. Yes sir."

It is difficult, indeed, for me to understand how a defense of such scant proportions can be said to exhibit "unusual diligence and ability" on the part of counsel. Taking into consideration (1) that but a single question was asked, and two words spoken, in defense against the criminal charge, and (2) that defense counsel himself was responsible for bringing out his client's past misdeeds, I would characterize the defense as more nearly falling within the category of no defense at all; a farce; a lack of genuine representation. (*McGee v. Crouse*, 190 Kan. 615, 376 P. 2d 792; *Smith v. State*, 199 Kan. 293, 429 P. 2d 103; *Odom v. United States*, 377 F. 2d 853.)

Defendant's counsel very properly tried to rectify his error by obtaining a new trial for his client. At the hearing on this motion defense counsel was frank and courageous in saying the defendant should have new and more competent counsel. He was also diligent in his efforts, which proved to be futile, to secure a new trial. His examination of many of the jurors was an attempt, in my view, to prove one of the grounds alleged in his motion—not an attempt to harass the jury.

I hold no brief for anyone guilty of committing forcible rape. It is an abhorrent and abominable crime. Nonetheless, a defendant who has been charged with the commission of a felony is entitled to a fair trial, no matter how horrendous the crime or apparent his guilt. This is a legal right belonging to every accused which this court has always been zealous in defending throughout its history. (See *State v. Taylor*, 198 Kan. 290, 424 P. 2d 612.)

In my opinion this defendant has not had a fair trial. The reason undergirding my dissent is as simple and as basic as that. I would reverse this case and return it for a new trial.