No. 46,064

EDDIE DAVID COX, *Appellee*, v. STATE OF KANSAS, *Appellant*.

(473 P. 2d 106)

Opinion filed July 17, 1970.

*Edward G. Collister, Jr.,* Assistant Attorney General, argued the cause, and *Kent Frizzell,* Attorney General, was with him on the brief for the appellant.

*Charles Bogan,* of Winn, Bogan and Johnson, of Abilene, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal by the state from a judgment in a K. S. A. 60-1507 proceeding setting aside a conviction of second degree kidnaping and felonious assault because of double jeopardy and a coerced plea of guilty.

This proceeding marks the fifth time the petitioner, Eddie David Cox, has been before the district court and this court in connection with the charge of kidnaping and felonious assault.

The appellee, hereinafter referred to as petitioner, filed the petition now under consideration on October 3, 1969. A hearing was held which was attended by the petitioner and his attorney. Following the hearing the trial court made findings of fact and conclusions of law and entered an order setting aside the conviction. The petitioner was released from custody.

The state has appealed contending generally the trial court erred in concluding that the petitioner was put twice in jeopardy and that his plea of guilty was the result of coercion.

Before considering detailed findings of the trial court and the specific objections made to this court, it will perhaps be helpful if we review the history and facts of the case.

The petitioner was originally charged in three counts—assault with intent to kill, first degree kidnaping and with harm to the victim and robbery in the first degree. A plea of not guilty was entered to each of the counts and trial was commenced on March 14, 1960. Highly summarized, evidence was presented at the trial as follows:

Lyle Koberstein, a complaining witness, testified that on the day he was kidnaped he was a patrolman for the Junction City Police Department. On that date he was directed by a call from the police station to go to Gerald's Jewelry Store where he found Eddie David

Cox attempting to cash a check. He and Cox left the jewelry store together for the police station in Koberstein's car. While in transit Cox drew a gun from underneath his coat and pointed it at Koberstein. After driving the car at Cox's direction to a place outside of town, Koberstein was pushed out of the car by Cox. At Cox's direction Koberstein reached to unsnap his gun and tried to unhook his gun to draw it. As that was happening Cox fired a shot which hit Koberstein in the right arm. Another shot was fired which struck the lapel of Koberstein's jacket. Koberstein then escaped by running down a grade into some small trees and shrubbery.

The only testimony offered by Cox in that criminal trial consisted of a statement by an officer of the Junction City Police Department concerning the location of Koberstein's car when it was located at 1:30 o'clock p. m. on October 31, 1959.

At the close of the state's evidence the count charging first degree robbery was dismissed.

The jury returned a verdict finding the petitioner guilty of assault with intent to kill and guilty of kidnaping in the first degree but stated that the kidnaping occurred without harm to the victim.

On appeal to this court (*State v. Cox*, 188 Kan. 500, 363 P. 2d 528) petitioner was granted a new trial because an improper form of verdict was submitted to the jury.

On September 8, 1961, petitioner was again arraigned on counts one and two—assault with intent to kill and first degree kidnaping with harm to the victim. The only objection made at the arraignment was "that the defendant was not properly in court." At the arraignment the petitioner stood mute and the court entered a plea of not guilty.

On September 12, 1961, the petitioner again appeared in court in person and by his attorneys and requested permission to change his plea to guilty. The colloquy which occurred between the trial court, the petitioner and his attorneys will be presented later herein. It will suffice to say at this point that the petitioner was permitted to withdraw the plea of not guilty and entered a plea of guilty of assault with intent to kill and second degree kidnaping. He was sentenced from one to ten years on the assault charge and twenty-five years for kidnaping in the second degree. The sentences were to run concurrently.

Later the petitioner filed a motion to correct his sentence and the sentencing court changed the sentence of twenty-five years

to not more than 30 years on the second degree kidnaping conviction. At the hearing on the motion to correct, the state attempted to introduce evidence of prior felony convictions for the purpose of invoking the provisions of the habitual criminal act. The evidence was excluded by the trial court and the ruling was affirmed by this court in *State v. Cox*, 194 Kan. 120, 397 P. 2d 406.

On September 7, 1965, the petitioner initiated his first proceeding under the provisions of K. S. A. 60-1507 raising the issue of double jeopardy. After a full evidentiary hearing the trial court sustained petitioner's contention that he had been twice put in jeopardy and ordered his release from confinement. This court stayed the release order pending the disposition of the case on appeal.

On appeal to this court it was held that the petitioner had not been twice placed in jeopardy and the trial court's order releasing the petitioner was reversed. (See *Cox v. State*, 197 Kan. 395, 416 P. 2d 741.) The basis of this court's decision was that the granting of a new trial places the parties in the same position as if a new trial had not been had and after the granting of a new trial a defendant could be tried on the same information as in the original trial although he had been convicted of a lesser offense. It was further held that the prohibition of double jeopardy under the Fifth Amendment to the Constitution of the United States was not applicable to state action by force of the Fourteenth Amendment. The decision followed a long line of decisions pronounced by this court and *Palko v. Connecticut*, 302 U. S. 319, 82 L. Ed. 288, 58 S. Ct. 149, and related cases.

Following the above decision petitioner sought and failed to obtain relief by way of habeas corpus in the federal courts. (See *Cox v. Crouse*, 376 F. 2d 824.)

On September 21, 1966, the petitioner filed another motion under the provisions of K. S. A. 60-1507 to vacate his sentence on the ground his plea of guilty was coerced. After a full hearing relief was denied and on appeal to this court the judgment was affirmed. It was held that an abuse of remedy existed in the further use by appellant of the provisions of K. S. A. 60-1507. (See *Cox v. State*, 200 Kan. 198, 434 P. 2d 843.)

We now reach the subject of the present appeal. We first note that in the present proceeding and in the proceedings heretofore discussed, the petitioner has at all times been represented by able trial lawyers.

The trial court made full and comprehensive findings of fact. We quote insofar as material here:

"6. There was no in-court interrogation of the defendant concerning his plea by the district court.

"7. The evidence adduced at this present hearing was that the petitioner had conferred with and been advised by two counsel concerning his rights and the consequence of his plea. There was no discussion concerning double jeopardy.

.  .  .  .  .  .  .  .  .  .  .  .  .

"11. On June 23d, 1969, the Supreme Court of the United States handed down its decision of Benton v. Maryland, 89 Supreme Court 2056, starting on page 2062: 'We today find that the double jeopardy prohibition of the Fifth Amendment represents a fundamental idea in our Constitutional heritage, and that it should apply to the States through the Fourteenth Amendment. In so far as it is inconsistent with this holding, Palko v. Connecticut is overruled.'

"12. The court finds that KSA 21-449 contains two separate and distinct offenses under the same title classification, 'Kidnaping in the first degree':

"A. Kidnaping as defined generally in the statute with the additional element of ransom or bodily harm, with the penalty being either death or life imprisonment.

"B. Kidnaping as defined generally, excluding any other element, with the penalty being not less than twenty years.

.  .  .  .  .  .  .  .  .  .  .  .  .

"15. The court finds that the offense set forth in 12 B above is a lesser crime as to the elements announced and the penalty set forth in 12 A.

"16. The court finds that 12 B is an included offense under 12 A and would have to be instructed on if the facts warranted, in a jury trial.

"17. The elements constituting 12 B are different from any of the other elements or penalties provided for by the other kidnaping statutes, i. e., KSA 21-450, 21-451, and 21-452.

.  .  .  .  .  .  .  .  .  .  .  .  .

"19. This court finds that the protection afforded by the Fifth Amendment as to double jeopardy is a substantive right, and that Benton v. Maryland, *supra*, must be given retroactive application.  .  .  .

"20. The court finds that neither court nor counsel talked with petitioner concerning double jeopardy or any rights that might accrue to him under the Fifth Amendment.

"21. The court finds that no intelligent and voluntary waiver can be had of something of which there is no knowledge.

"22. The court finds that the petitioner was placed in jeopardy twice, contrary to the Fifth Amendment to the Constitution of the United States.

"23. The court finds that by virtue of the jury's verdict (see finding 2), the petitioner was acquitted by implication of the offense providing for the penalty of death or life imprisonment, the erroneous instruction notwithstanding.

.  .  .  .  .  .  .  .  .  .  .  .  .

"28. The court further finds that plea of petitioner to both counts was coerced, in that at the time said plea was tendered, petitioner was standing once

again before the court under a statute providing for a life imprisonment or death penalty.

"29. Based upon the court's findings numbered 24 through 28, *supra,* the court finds that the petitioner was coerced by an improper information, and therefore, that his plea to both counts was involuntary."

We will first consider the state's contention that—

"The trial court erred in concluding that K. S. A. 21-449 contains two separate and distinct offenses and that kidnapping as defined in that statute with a penalty of not less than twenty (20) years is a lesser included offense of kidnapping as described in K. S. A. 21-449 with a penalty of death or life imprisonment."

K. S. A. 21-449 defines kidnaping in the first degree and provides for different penalties in case the victim is harmed or unharmed. That part of the statute material here provides:

"If any person or persons shall willfully, without lawful authority, seize, confine, inveigle, decoy, kidnap or take or carry away by any means whatever, any person or persons or cause such child or person or persons to be secretly confined against his will, for the purpose and with the intention of causing the father or mother or any other relative of the person so kidnaped, or any other person, to pay or offer to pay any sum as ransom or reward for the return or release of any person or persons, or if bodily harm is in any way inflicted upon the person or persons so kidnaped, said person or persons so guilty of the above-mentioned acts or act, shall, on conviction, be deemed guilty of kidnaping in the first degree and be punished by death or by confinement and hard labor in the penitentiary for life, if the kidnaped person has been harmed, or by imprisonment in the penitentiary for not less than twenty (20) years if the kidnaped person is unharmed. If there is a jury trial the jury shall determine which punishment shall be inflicted. If there is a plea of guilty the court shall determine which punishment shall be inflicted, and in doing so shall hear evidence: . . ."

It appears to us that the statute provides for two distinct offenses and a separate penalty for each.

Kidnaping in the first degree is defined generally in the statute with the additional element of bodily harm to the victim. This offense carries a penalty of death or life imprisonment.

Kidnaping in the first degree is defined generally in the statute without the element of bodily harm to the victim. This offense carries a penalty of not less than twenty years imprisonment.

We must agree with the conclusion of the trial court on this issue.

We now come to the second question—was the petitioner twice placed in jeopardy for the offense of kidnaping with harm to the victim?

The petitioner was first tried for first degree kidnaping and the

jury convicted him of kidnaping without harm to the victim which it must be conceded was an acquittal of the greater offense of kidnaping with harm to the victim. After the reversal by this court for a new trial, the petitioner was again arraigned on the same information which included kidnaping with harm to the victim.

In the court below, as he does here, the petitioner rested his case upon the decision in *Green v. United States*, 355 U. S. 184, 2 L. ed. 2d 199, 78 S. Ct. 221, 61 A. L. R. 2d 1119, where the Supreme Court of the United States ruled that in a federal prosecution the double jeopardy clause of the Fifth Amendment to the Constitution of the United States prohibits a second prosecution of a greater offense after the conviction of a lesser offense and the reversal of that conviction, and *Benton v. Maryland*, 395 U. S. 784, 23 L. ed 2d 707, 89 S. Ct. 2056, where it was held the double jeopardy provision of the Fifth Amendment is applicable to the states through the Fourteenth Amendment. The petitioner then suggests that the ruling in the *Benton* case should be applied retroactively.

The trial court adopted the petitioner's contention and the state claims error.

Perhaps before we become involved in a discussion of the retroactive effect of the *Benton* case, we should first determine if the petitioner was ever twice placed in jeopardy for the offense of first degree kidnaping with harm to the victim.

We should first determine at what stage of a proceeding jeopardy attaches as the word "jeopardy" is used under the state and federal laws.

The mere pendency of an indictment, information or complaint does not constitute jeopardy. (See 22 C. J. S., Criminal Law, § 241, p. 640 and *United States v. Haupt*, 152 F. 2d 771, 795.

Under the same section of C. J. S., *supra*, at page 639, we find the following statement:

"In those jurisdictions which follow the generally recognized rule, jeopardy attaches at the time the trial commences, and if the trial is to a jury, the trial commences when the jury are impaneled and sworn, and thus it is said that jeopardy attaches when the jury are impaneled and sworn. If the trial is to the court without a jury, it is well settled that, for the purpose of determining when jeopardy attaches, the trial begins at the time of the commencement of the taking of testimony, that is, when the first witness is duly sworn, and, accordingly, in such a case, jeopardy begins after accused has been indicted, arraigned, and has pleaded, and the court has begun to hear the evidence, or the trial has begun by the reading of the indictment to the court. . . ."

A plea of guilty to an indictment or information is jeopardy if

entered of record. However, if the accused withdraws a plea of guilty with the consent of the court, he waives his defense of former jeopardy. A mere plea of not guilty to an indictment or information does not amount to putting an accused in jeopardy (22 C. J. S., Criminal Law, § 248, p. 654).

In *Hunter v. Wade,* 169 F. 2d 973, 8 A. L. R. 2d 277, affirmed *Wade v. Hunter,* 336 U. S. 684, 93 L. ed. 974, 69 S. Ct. 834, reh. den. 337 U. S 921, 93 L ed. 1730, 69 S. Ct. 1152, we find the following statement at page 975:

"It is the general rule that an accused is in jeopardy within the meaning of the guaranty against double jeopardy contained in the Fifth Amendment to the Constitution of the United States when he is put on trial in a court of competent jurisdiction upon an indictment or information sufficient in form and substance to sustain a conviction, and a jury has been empaneled and sworn; and where the case is tried to the court without the intervention of a jury, jeopardy attaches when the court begins the hearing of evidence. . . ."

What has been said appears to be in harmony with our own decisions insofar as they have covered the field. In *State v. Stiff,* 117 Kan. 243, 234 Pac. 700, we held:

"A person who is brought to trial on an information which, although defective, suffciently charges an offense to sustain a judgment on a verdict of guilty, is placed in jeopardy when the jury is sworn to try the cause; . . ." (Syl. ¶ 1.)

With the general law rather well understood as to when jeopardy attaches we should examine the record, which consists of colloquy between the trial judge, the defendant and counsel, to determine just what did take place in connection with the charge of first degree kidnaping. We quote:

"THE COURT: You have heard the reading of the Information as amended, Mr. Waters, what do you have to say? How do you wish to plead?

"MR. WATERS: If it please the Court, first of all in regard to Count 2, the defendant would plead not guilty to Count 2 as read but is willing to enter a plea of guilty to the lesser included offense of kidnapping in the second degree, which is contrary to G. S. 21-550 [450].

. . . . . . . . . . . .

"THE COURT: What do you have to say?

"MR. DEAM: If it please the Court, the State is willing to accept the plea to the lesser included offense of kidnapping in the second degree, contrary to 21-450, in full jeopardy to its rights to proceed further in the matter. I have conferred with the Attorney General regarding this matter and that is acceptable with him.

. . . . . . . . . . . .

"THE COURT: Do you understand this, Mr. Cox?

"THE DEFENDANT: Yes, sir, I do.

"THE COURT: Do you also enter a plea to this?

"THE DEFENDANT: I enter a plea of guilty to second degree kidnapping.

"THE COURT: Do you wish to be sentenced under this before the second count?

"MR. DEAM: Now, that is the second count.

"THE COURT: Yes, that is the second count.

"MR. DEAM: Now have the matter of the first count.

"THE COURT: The first count is the shooting, on purpose and malice aforethought, shoot one Lyle Koberstein with a revolver with intent to kill him. Now, how do you wish to plead to that?

"THE DEFENDANT: Guilty.

"MR. WATERS: Defendant pleads guilty, Your Honor.

.   .   .   .   .   .   .   .   .   .   .   .   .

"THE COURT: . . . Upon your plea of guilty, the Court finds and adjudges you guilty, and it now becomes the duty of the Court to make inquiry of you, Mr. Cox, and your attorneys as to whether or not you or either of you have any legal reason why the sentence of the Court should not now be pronounced upon you?

"THE DEFENDANT: None.

"MR. WATERS: We have none, Your Honor.

"MR. HORNBAKER: None Your Honor."

It definitely appears that before the petitioner entered his plea of guilty the information was for all intent and purpose amended to eliminate kidnaping in the first degree and therefore he was never placed in jeopardy the second time for the greater offense. True, the amendment was oral but it was made a matter of record and was binding on the state. In 42 C. J. S., Indictments and Informations, § 237, p. 1248, we find the following statement:

"No amendment of the information is necessary in order that the prosecuting attorney may abandon a greater charge and proceed against accused on a lesser one included therein; a simple motion, made verbally in open court, or an announcement of such intention, suffices if made before the trial begins."

The above rule was followed in *Silas v. State,* 232 Ark. 248, 337 S. W. 2d 644, cert. den. 365 U. S. 821, 5 L. ed. 2d 698, 81 S. Ct. 705.

It necessarily follows that the information having been amended, before the accused pleaded guilty, to include only kidnaping in the second degree, the petitioner was not the second time placed in jeopardy for the greater offense of kidnaping in the first degree either with or without harm to the victim. (K. S. A. 21-449.)

We have remaining the question of whether petitioner's plea of second degree kidnaping was coerced because before his agreement to so plead he was faced with a charge which on conviction carried a penalty of death or life imprisonment.

This same contention was raised in petitioner's second proceeding under K. S. A. 60-1507. The trial court, in answer to the claim that there had been no in-court interrogation of the defendant, quoted from *Miller v. Crouse,* 346 F. 2d 301, 306:

". . . It is, of course, a fundamental basic right that an accused be advised of the nature of the charges against him and the consequences of a plea of guilty. Smith v. O'Grady, 312 U. S. 329, 61 S. Ct. 572, 85 L. Ed. 859. This is implicit in a knowing entry of a plea of guilty. It is not, however, mandatory that the judge ritualistically and personally advise the accused of these matters. It is sufficient that the accused be in fact aware of such regardless of the source from where the information comes. The court, of course, has a duty to satisfy itself that the accused is aware of the nature of the charges and the consequences of a plea of guilty, but no specific formula need be followed. We can think of no better way, aside from the trial court performing the function itself, of sufficiently putting an accused on real notice of these matters than through his own lawyer. . . ."

The trial court in the petitioner's second proceeding found:

"This Court believes that the record reflects that the petitioner was well aware of the facts and was well aware of the consequences and advised as to same by his capable counsel. See *State v. Angle,* 197 Kan. 492 [419 P. 2d 935], and *Thompson v. State,* 197 Kan. 630 [419 P. 2d 891]."

It may be stated in passing that this court disposed of the last above mentioned K. S. A. 60-1507 proceeding on the basis of abuse of remedy in the further use of K. S. A. 60-1507. (*Cox v. State,* 200 Kan. 198, 434 P. 2d 843.)

In the face of the continued abuse of such process, it is with considerable hesitancy that we again review on the merits the same contention.

We fail to find any coercion influencing the petitioner in making his plea of guilty other than the advice of his able counsel operating for petitioner's best interest. True, he was not advised that he could not be tried again for the offense of first degree kidnaping with harm to the victim. He was not so informed because it was contrary to the pronouncement of the law by this court and the Supreme Court of the United States at the time. However, the petitioner was not alone concerned by the death penalty, he was even more concerned by the prospect of life imprisonment because the chances were greater. We quote in part a letter to petitioner from his attorneys:

"We are writing this letter to you and are sending a copy to your mother. We ask that you seriously consider these matters.

. . . . . . . . . . . . . . .

"The Supreme Court decision is such that if you are now convicted of kidnapping you will be sentenced to either *life imprisonment* or death. Beyond that, even if you are acquitted on the kidnapping, a possibility that is very very remote, and if you are convicted on the felonious assault, then we know *the state will invoke the habitual criminal act and you will be sentenced to the penitentiary for life. I believe I am correct in stating that you have at least two prior convictions.*

"Eddie, it appears to us that the only possibility that can result from the trial is that you will get either *life imprisonment* or death. We can and will do our best for you but all we can do is raise trouble and questions and these will not materially influence or affect the jury.

"Now, we have reason to believe and advise you that we can work it out whereby you can enter a plea of guilty to second degree kidnapping and be sentenced to the penitentiary for a term of not less than 20 or more than 30 as provided by law. Also, we have reason to believe that the conviction or upon a plea of guilty to felonious assault you would be sentenced to 3-10 years, the sentences to run concurrently. *And, the state would not invoke the habitual criminal act.*" (Emphasis supplied.)

One of petitioner's attorneys testified that "he discussed the case considerably with Mr. Cox."

The petitioner stated on request for admission of fact:

"I feel my attorneys did their very best with their working knowledge of criminal law. If a Kansas attorney practiced criminal law exclusively he would starve to death. They do not keep abreast of criminal opinions and law. I was not properly advised of the consequences of my plea as they did not know the consequences and as they had been misled themselves by the Attorney General's office.

"My attorneys feared for my life. They saw a chance for me to escape life or death, and they overcame my will and talked me into pleading to something I didn't want to do. The attorneys wrote my mother. She put pressure on me to plead guilty to both charges. Psychological pressure was brought to bear from my attorneys, Mr. Hornbaker and Mr. Waters, and from relatives and my will was overcome. My attorneys kept reading from 188 Kan. 500 and telling me about life or death. At no time was I advised as to the consequences of my plea, what constituted a second degree kidnapping, and what the legal sentence was."

Even if the petitioner had been advised that he could not be again tried for first degree kidnaping with harm to the victim, he was still facing life imprisonment from two other sources of the law.

He was subject to life imprisonment if convicted of kidnaping in the second degree without harm to the victim. On such conviction the penalty was not less than twenty years imprisonment. At the time petitioner was sentenced K. S. A. 21-109 was in effect, and provided:

"Whenever any offender is declared by law punishable, upon conviction,

by confinement and hard labor for a term not less than any specified number of years, and no limit to the duration of such imprisonment or confinement is declared, the offender may be sentenced to imprisonment during his natural life, or for any number of years not less than such as are prescribed; . . ." (See, also, *State v. Johnson,* 185 Kan. 1, 3, 340 P. 2d 373.)

The petitioner had at least two prior convictions. The conviction of felonious assault, about which there was no question, would have carried life imprisonment under the habitual criminal act. (K. S. A. 21-107a.)

Petitioner had ample reason to plead guilty to second degree kidnaping and thus avoid life imprisonment which he was facing under any conviction.

We are forced to conclude that the petitioner did not meet the burden of proof and establish coercion in his plea of guilty by a preponderance of the evidence. (*Mann v. State,* 200 Kan. 422, 436 P. 2d 358.)

The judgment is reversed with instructions to the trial court to reinstate the conviction of the petitioner entered on the 12th day of September, 1961.

APPROVED BY THE COURT.