No. 46,673

STATE OF KANSAS, *Appellee,* v. JACK R. GUNZELMAN, *Appellant.*

(502 P. 2d 705)

Opinion filed November 4, 1972.

*Thomas C. Boone,* of Hays, argued the cause and was on the brief for the appellant.

*H. D. Oelschlaeger,* county attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Jack R. Gunzelman was tried and convicted for the crime of battery of a law enforcement officer (K. S. A. 1971 Supp. 21-3413) and for the crime of making a terroristic threat against another person (K. S. A. 1971 Supp. 21-3419). He appeals from conviction and sentence thereon.

Appellant attacks the constitutionality of the terroristic threat statute, claiming it is vague, indefinite and uncertain. In addition, he attacks his conviction as to both charges on the ground of prejudicial trial error relating to conduct of the county attorney in cross-examining the appellant regarding prior convictions.

The charges arose from an incident which occurred at the home of a highway patrol officer, Bobby L. Norton, in Stockton, Kansas, on the evening of April 5, 1971. A brief recitation of the facts will be helpful. Appellant was in the roofing business and hired employees to drive his roofing trucks. Patrolman Bobby L. Norton had issued a traffic ticket to one of the truck drivers for not having a driver's license. At 9:30 that evening Norton received a call on the telephone from appellant who claimed Norton was picking on the drivers. Appellant warned the patrolman to quit stopping his vehicles. No violence was threatened over the telephone. Later that same evening the appellant and his driver appeared at the patrolman's front door. The following took place on or near the front porch of the home.

The patrolman testified that the appellant was belligerent when he and his driver, Aguilera, came to see the patrolman. The patrolman's wife answered the door bell, then she retreated inside the house. Her husband stepped out on the porch. It was after 9:30 P. M. and the children were in bed. Appellant accused the patrolman of picking on his drivers and said, "I am warning you for the last time that you are not pulling my drivers over for no reason and arresting them; . . ." By this time the patrolman's wife was looking out of a darkened bedroom window and was worried about her husband's safety. Appellant said, "You have a wife and family. You had better give some thought to that. You are gone a lot of nights. Where is your bedroom? I will be back." Accord-

ing to the patrolman's testimony appellant walked around and peered into a window south of the porch.

The patrolman told appellant to leave. Appellant turned toward the street. The patrolman turned to go up the steps to the porch. He heard a movement and had partially turned back toward the street when he was hit in the rib cage by the appellant's fist. He fell against the iron railing of the porch and as he straightened up he received a direct blow in the right eye. Appellant then swung a wild blow which failed to connect, and he returned to his truck. The patrolman looked around him for the driver Aguilera, did not see him but decided to go into the house. The patrolman said to the appellant, "Jack, you know you have had it." The appellant replied, "Go ahead and arrest me. I have money to fight it." The patrolman went into the house and appellant drove off in his truck.

The patrolman's wife had heard the iron railing on the porch rattle when appellant knocked the patrolman back against the railing. She was able to hear part of the conversation including, "I am warning you for the last time. You had better quit picking on my men." She saw appellant shaking his finger at her husband. She was frightened. She saw the man lunge at her husband and heard the blow. She called the sheriff on the telephone. The appellant was arrested later that night.

The terroristic threat statute under which appellant was charged reads as follows:

"A terroristic threat is any threat to commit violence communicated with intent to terrorize another, or to cause the evacuation of any building, place of assembly or facility of transportation, or in wanton disregard of the risk of causing such terror or evacuation.

"A terroristic threat is a class E felony." (K. S. A. 1971 Supp. 21-3419.)

According to a comment by the judicial council, which comment appears below the statute, this is a new provision designed to fill a gap in the law. The idea was drawn from the American Law Institute's Model Penal Code, § 211.3. This section of the Model Penal Code reads:

"A person is guilty of a felony of the third degree if he threatens to commit any crime of violence with purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience." (MPC § 211.3)

The American Law Institute's comments, which follow this section of the code, may be helpful. In part they read:

". . . Where, as in the present section, the object is to prevent serious alarm for personal safety, such as may arise from letters or anonymous telephone calls threatening death, kidnapping or bombing, the class of threats can be narrowly defined, and the gravity of the offense can be related both to the seriousness of the threat and the disturbing character of the psychological result intended or risked by the actor. . . ." (MPC § 211.3)

Under the constitutional attack lodged by the appellant, he contends the statute was enacted to proscribe threats in connection with campus unrest, fire and bomb threats to public buildings and threats which arise from mob violence. He argues the statute is vague, indefinite and uncertain if it is extended to terroristic threats to person or property of an individual as it does not advise the ordinary citizen of the required nature of the proscribed threats.

This constitutional attack is based on Section 10, Bill of Rights, Constitution of the State of Kansas; and Amendment 14, § 1, Constitution of the United States.

A criminal statute which either forbids or requires an act in vague terms that men of common intelligence must guess at its meaning and differ as to its application lacks the first essential of due process of law. A statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. (*State v. Blaser*, 138 Kan. 447, 26 P. 2d 593; *State v. Rogers*, 142 Kan. 841, 52 P. 2d 1185; *State v. Carr*, 151 Kan. 36, 98 P. 2d 393.) In creating an offense which was not a crime at common law the legislature must make the statute sufficiently certain to show what was intended to be prohibited and punished, otherwise it will be void for uncertainty. But reasonable certainty is all that is required, and liberal effect is always to be given to the legislative intent in view of the evil to be corrected. (*State v. Davidson*, 152 Kan. 460, 105 P. 2d 876; *State v. Hill*, 189 Kan. 403, 369 P. 2d 365, 91 A. L. R. 2d 750.) These rules have been recognized and applied in our more recent cases. See *Tri-State Hotel Co. v. Londerholm*, 195 Kan. 748, at page 765, 408 P. 2d 877, where it was said the test to determine whether a criminal statute is void by reason of being vague and ambiguous is— does the language convey a sufficient definite warning as to the proscribed conduct when measured by common understanding and practice? If the statute does it is not void for vagueness. See, also, *State, ex rel., v. Fairmont Foods Co.*, 196 Kan. 73, 78, 410 P. 2d 308, and *State v. Johnson*, 196 Kan. 208, 211, 410 P. 2d 423.

The main thrust of appellant's constitutional argument is based

upon a failure by the legislature to define the words "threat" and "terroristic". In the general definition section of the Kansas Criminal Code (K. S. A. 1971 Supp. 21-3110) *threat* is defined as follows, "(24) 'Threat' means a communicated intent to inflict physical or other harm on any person or on property." *Terrorize* is not defined therein, so it must be measured by what men of common intelligence would consider it to mean.

Webster's Third New International Dictionary (Unabridged) says to terrorize means to coerce by threat or violence, to rule by intimidation.

The few other jurisdictions which have dealt with "terroristic threat" statutes have had no trouble in finding the common meaning of the term. In *Masson v. Slaton,* 320 F. Supp. 669 (N.D. Ga. 1970) an action was brought to enjoin a prosecution under the Georgia Criminal Code, § 26-1307 on the ground the statute was unconstitutionally vague. The statute provided: "A person commits a terroristic threat when he threatens . . . to burn or damage property with the purpose of terrorizing another. . . ." The court found nothing vague or indefinite in the statute. In *Armstrong v. Ellington,* 312 F. Supp. 1119 (W.D. Tenn. 1970) the court dealt with T.C.A. § 39-2805. Although the court struck part of the statute as unconstitutionally vague, it upheld the portion of the statute which imposed punishment upon "Any person, . . . who shall willfully prowl or travel or ride or walk through the country or town . . . for the purpose of . . . terrorizing any citizen or citizens of the state, or for the purpose of causing, through threats . . . any citizen or citizens of this state to do or not to do any lawful thing or to do any unlawful thing, . . ." On page 1126 of the reported case the court defined terrorizing as follows:

". . . It means to reduce to terror by violence or threats, and terror means an extreme fear or fear that agitates body and mind. We hold that 'terrorizing' is specific enough and within the appropriate area in which the State of Tennessee might protect the citizens even though expression might be involved."

(In accord *Baxter v. Ellington,* 318 F. Supp. 1079 [E.D. Tenn. 1970].)

Given the type of limiting definition imposed by the Tennessee court, K. S. A. 1971 Supp. 21-3419 would appear to survive a constitutional challenge of vagueness. We note the trial court in our present case did not define the term "terrorize" in its instructions,

but no objection to the instruction was made by the appellant. The pattern criminal instruction in PIK Criminal 56:23 adequately covers the statute except for the definitions of "threat" and "terrorize".

The word "threat" as used in K. S. A. 1971 Supp. 21-3419 means a communicated intent to inflict physical or other harm on any person or on property. (K. S. A. 1971 Supp. 21-3110 [24].) The word "terrorize" means to reduce to terror by violence or threats, and terror means an extreme fear or fear that agitates body and mind.

Given limiting definitions for the words "threat" and "terrorize", as those terms are understood by men of common intelligence, K. S. A. 1971 Supp. 21-3419 proscribing terroristic threats survives any constitutional challenge for vagueness and uncertainty under Section 10, Bill of Rights, Constitution of the State of Kansas, and under Amendment 14, § 1, Constitution of the United States.

Although the statute may have been directed at campus unrest, fire and bomb threats to public buildings and acts of mob violence the main elements of the offense are threats communicated with a specific intent to terrorize another. The wording of the statute appears sufficient to proscribe such threats whether directed generally against one or more persons and regardless of the purpose which the terrorist has in mind to accomplish.

Appellant's next point of error relates to conduct of the county attorney in cross-examining the appellant regarding prior convictions.

After the state rested its case the appellant took the witness stand in his own behalf. After testifying as to his version of the incident he was cross-examined by the county attorney in the following manner:

"Q. Have you been arrested before on the charge of assault and battery?

"Mr. Shultz [defense counsel]: I object to that as incompetent, irrelevant, and immaterial, and beyond the scope.

"The Court: Oh, I think this at least is preliminary. On that basis, Ladies and Gentlemen of the Jury, any inquiry in this case regarding any previous crimes that the man may have committed must be limited entirely and exclusively to his credibility as a witness. It shouldn't be considered by you in any way, shape, or form as any evidence as to his guilt or innocence in this case. At no time is it to be considered by you as reflecting on whether or not he might be guilty of the crimes in this case. It would be permitted to strictly for the purpose of showing credibility of the witness, in that capacity only. You may answer the question.

"A. Is he talking about the last hundred years?

"THE COURT: Any time in your lifetime.

"A. Yes.

"Q. What was the last time?

"A. Seven years—

"MR. SHULTZ: I will object to that.

"THE COURT: It has been answered. Overruled.

"Q. Where was that at?

"A. At Hays.

"Q. Prior to that, what was the next time before that?

"MR. SHULTZ: I am going to object to this, Your Honor. It is going beyond the state of credibility.

"THE COURT: I think you are correct. I will sustain the objection.

"Q. Mr. Gunzelman, have you ever been convicted here in this county of assault and battery?

"A. I am trying to think. I have had two or three traffic tickets in the last four or five years. I don't believe so, no.

"Q. If I told you that on November 6, 1961, you were convicted here in the County Court of Rooks County of assault to one Warren Hoffman in the Hotel Coffee Shop in the City of Plainville; on the same day, October 26, 1961, on the same charge you were found guilty of assaulting, beating and wounding Mrs. Ava Oderkirk at the Shaw Hotel Coffee Shop, in the City of Plainville. Would you believe that to be correct?

"A. There was a roofer working for me charged in this case.

"Q. This is the matter of State of Kansas vs. Jack R. Gunzelman—

"MR. SHULTZ: That is not the way to present such a record, Your Honor?

"THE COURT: Sustained.

"Q. Will you answer my question whether you remember about that case?

"A. Well, I do know of its being brought up. You are going back years and years.

"THE COURT: Just answer the question.

"A. That was in 1955, wasn't it.

"Q. Now, you remember. Did it involve a cook and waitress—

"MR. SHULTZ: I am going to object.

"THE COURT: Sustained. The Jury will disregard both the last question and answer. It is not evidence in this case. Don't consider it.

"Q. You remember that case, then, don't you?

"MR. SHULTZ: Objection—

"THE COURT: Sustained.

"Q. Mr. Gunzelman, I didn't ask about anyone—the one prior I asked about—

"MR. SHULTZ: I object; this is argumentative.

"THE COURT: Disregard the comment from the County Attorney; it is highly improper.

"Q. In all these cases that are assault and battery cases, you have been charged with assault and battery, and in some of them you pled guilty to. Do you admit this that you pled guilty?

"MR. SHULTZ: I object to the form of the question.

"Q. Did you plead guilty to some of the assault and battery charges?

"THE COURT: That is too indefinite. Sustained.

"Q. Do you recall how many times you have been convicted of these kind of charges?

"A. No.

"Q. Would you say it has been quite a number of times, a few times, give times?

"MR. SHULTZ: I object to the form of the question, Your Honor. I believe this is highly improper?

"THE COURT: I think it has been fully covered, too. Objection sustained.

"MR. SHULTZ: May we approach the bench just a minute. Without any argument I want the record to show a renewal of my motion that I made at the close of the State's evidence is now made at the close of all the evidence.

"THE COURT: It is overruled."

The state insists prior convictions were admissible under K. S. A. 60-455 and that no error was committed since the court refused to admit the testimony.

K. S. A. 60-455 reads:

"subject to section 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion but, . . . such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Evidence of unrelated offenses is generally inadmissible under the statute. The requirements of the statute should be strictly enforced. To justify departure from this general inadmissibility the trial court should conduct a hearing in the absence of the jury to determine probative value as to one or more of the eight elements to which such evidence must be relevant, *i. e.* motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. When in the discretion of the court there is a pattern, similarity or connection between the facts surrounding the prior offense and the one with which the accused is presently charged which has relevance in proving specific matters in issue, the prior conviction may then be admitted. Such evidence may only be admitted with proper limiting instructions. (See *State v. Motley,* 199 Kan. 335, 337, 338, 430 P. 2d 264, and *State v. Taylor,* 198 Kan. 290, 424 P. 2d 612.) The state did not attempt to have the evidence of prior offenses admitted in accordance with K. S. A. 60-455.

In addition, evidence of other offenses may not be elicited for the first time on the cross-examination of the accused for the pur-

pose of attacking his character or credibility unless he has first introduced evidence of his good character (K. S. A. 60-447) or introduced evidence admissible solely for the purpose of supporting his credibility. (K. S. A. 60-421.)

K. S. A. 60-447 provides:

". . . (*b*) in a criminal action evidence of a trait of an accused's character as tending to prove his guilt or innocence of the offense charged, . . . if offered by the prosecution to prove his guilt, may be admitted *only after the accused has introduced evidence of his good character.*" (Emphasis added.)

K. S. A. 60-421 reads:

"Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his credibility. *If the witness be the accused, in a criminal proceeding, no evidence of his conviction of a crime shall be admissible for the sole purpose of impairing his credibility unless he has first introduced evidence admissible solely for the purpose of supporting his credibility.*" (Emphasis added.)

At no time at the trial did appellant introduce evidence of his own good character or evidence to support his own credibility and the state may not be permitted to attack his character or credibility in a criminal trial. (*State v. Motley*, supra; *State v. Wright* [dissenting opinion], 203 Kan. 54, 59, 453 P. 2d 1.)

In *State v. Roth*, 200 Kan. 677, 438 P. 2d 58, this was specifically pointed out. In *Roth* this court disapproved statements in the case of *State v. McCorvey*, 199 Kan. 194, 428 P. 2d 762, and held such was not proper cross-examination since it was not responsive to testimony given on direct examination or relevant thereto and was proscribed by our statutes. For later cases see *State v. Cantrell*, 201 Kan. 182, 187, 440 P. 2d 580, cert. den. 393 U. S. 944, 21 L. Ed. 2d 282, 89 S. Ct. 315; *State v. DeLespine*, 201 Kan. 348, 351, 440 P. 2d 572; *State v. Jackson*, 201 Kan. 795, 798, 443 P. 2d 279, cert. den. 394 U. S. 908, 22 L. Ed. 2d 219, 89 S. Ct. 1019; *State v. Wright*, 203 Kan. 54, 55, 453 P. 2d 1; and *State v. Pappan*, 206 Kan. 195, 197, 477 P. 2d 989.

In view of the comments of the trial judge when the cross-examination was first initiated and the persistent efforts of the county attorney by which the jury was advised of appellant's prior convictions prejudicial error occurred in the trial of this case and it must be sent back for a new trial.

We note that appellant was charged with aggravated battery (K. S. A. 1971 Supp. 21-3415) and convicted of the lesser offense of

battery (K. S. A. 1971 Supp. 21-3413) of a law enforcement officer. As to these two offenses a conviction of the lesser offense is an acquittal of the greater degree of the offense. (*Green v. United States,* 355 U. S. 184, 2 L. Ed. 2d 199, 78 S. Ct. 221, 61 A. L. R. 2d 1119; *Price v. Georgia,* 398 U. S. 323, 26 L. Ed. 2d 300, 90 S. Ct. 1757; *Cox v. State,* 205 Kan. 867, 873, 473 P. 2d 106; and *State v. Pierce, et al.,* 208 Kan. 19, 36, 490 P. 2d 584 [dissenting opinion].)

The judgment and sentences are reversed and the case is remanded with directions to grant the appellant a new trial on the lesser included offense in count one, battery of a law enforcement officer, and on the offense of committing a terroristic threat as charged in count two of the information.