(629 P.2d 748)

No. 51,470

STATE OF KANSAS, *Appellee,* v. CARL E. MILLER, *Appellant.*

Opinion filed June 12, 1981.

*Tim Connell,* of Connell & Connell, of El Dorado, for appellant.

*Geary N. Gorup,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before REES, P.J., ABBOTT and SPENCER, JJ.

ABBOTT, J.: This is a direct appeal by the defendant, Carl E. Miller, from his conviction of communicating a terroristic threat (K.S.A. 21-3419).

The charge arose as a result of defendant's having burned a wooden cross on the driveway of the residence of Norman Manley, then an assistant county attorney for Butler County, Kansas. The sole issue presented on appeal is whether the trial court erred in overruling the defendant's motion for a directed verdict of acquittal at the completion of the State's evidence.

No verbal or written threats were made and no personal confrontation occurred at the time the cross was burned. Mr. and Mrs. Manley were not at home at the time, but their child and a teenage babysitter were. A neighbor observed two suspicious persons in a pickup truck parked near the Manley home. The neighbor left to go to the grocery store, and when he returned he noticed a fire on the Manleys' concrete driveway. He investigated and saw that the burning object was a wooden cross that was laying flat on the driveway about fifteen feet from the garage and the Manley home. The record before us does not reveal the size of

the cross, but it was small enough that one bucket of water put out the fire; and a police officer picked up the charred cross and placed it in the trunk of his police vehicle. Defendant was convicted on the strength of evidence from two witnesses who testified he told them that he had burned the cross on Manley's driveway.

Defendant argues that the State failed to prove a threat to commit violence; that, at best, all the State proved was an implied threat, the meaning of which is too ambiguous to support a criminal conviction for terroristic threat, as it would not fall within the narrowly defined class of threats suggested by the comment under section 211.3 of the American Law Institute Model Penal Code (1980). He further contends that there remains the question of what specific violent act is threatened by one who burns a cross in the yard of another.

This incident occurred at about 9:00 p.m. on December 2, 1978. Neither the Manleys' daughter nor the babysitter was aware of the incident until the neighbor called to alert them. Norman Manley had known the defendant for four or five years, and had represented him on prior occasions. Manley had commenced prosecuting the defendant in October on several misdemeanor traffic charges and, preceding the cross-burning on December 2, Manley had indicated to the defendant that he was going to recommend a jail sentence. Defendant was upset about having to hire another lawyer; he became loud and belligerent, shoved his face into Manley's, and forced Manley backward a couple of steps. Manley interpreted that act as an attitude problem rather than as a threat. On November 4 or 5, defendant went to Manley's home and offered to "come up" with $500, which Manley could apply as a fine in any manner he saw fit, to dispose of the charges against defendant without his being required to serve time in jail. Manley replied that he would insist on a maximum jail sentence. Defendant began cursing and hollering, and Manley went back into his house and had no further contact with the defendant.

Manley testified he interpreted the cross-burning as a threat; that it said the defendant is capable of coming onto the property even during waking hours when traffic is about, when neighbors are on the streets, when the home is obviously occupied. It thus gives a message that cross-burners are capable of coming back later and doing something more serious.

As defendant points out and our research confirms, there are no reported cases considering whether a cross-burning amounts to a terroristic threat. Defendant argues that the State of Georgia has specifically included a provision in its terroristic threat statute (Ga. Code § 26-1307[b]) making it a terroristic threat to burn a cross with intent to terrorize another. Thus, he contends, it is clear that the uniform act does not include cross-burning as a terroristic act. We reject that argument for two reasons. The Georgia statute more closely follows the uniform act than does our Kansas statute, and the two statutes are capable of entirely different construction. In addition, the fact that the Georgia legislature felt it necessary to specifically single out one act as a terroristic threat does not in and of itself mean the act would not be under a statute that does not separately set it out.

K.S.A. 21-3419 provides that "a terroristic threat is any threat to commit violence communicated with intent to terrorize another, or to cause the evacuation of any building, place of assembly or facility of transportation, or in wanton disregard of the risk of causing such terror or evacuation."

Our Supreme Court has previously considered the terroristic threat statute in three cases, two of which seem to shed some light on the question before us. In *State v. Gunzelman,* 210 Kan. 481, 502 P.2d 705 (1972), the Supreme Court considered an argument that the statute is vague and ambiguous, but determined it to be constitutional. Although we have some reservations concerning the constitutionality of the statute due to its vagueness in a number of areas, this court is duty-bound to follow the law as established by the Supreme Court of our state in the absence of some indication that it is departing from its previously expressed position. In any event, the defendant here does not challenge the constitutionality of the statute.

In *Gunzelman,* the words "threat" and "terrorize" as used in K.S.A. 21-3419 were defined respectively as "a communicated intent to inflict physical or other harm on any person or on property . . . to reduce to terror by violence or threats, and terror means an extreme fear or fear that agitates body and mind." As we view *Gunzelman,* the Supreme Court, by its definition of threat, is also defining the word "violence" or perhaps is including that definition in its adopted definition of threat. It is interesting to note that the Supreme Court cited with approval a

federal case that upheld a portion of a terroristic threat statute imposing punishment upon any person who shall willfully prowl or travel or ride or walk through the country or town for the purpose of terrorizing any citizen. That statute is apparently aimed at preventing organizations such as the KKK from intimidating citizens by terror in some manner much less threatening than is now meant by the burning of a cross on the property of another.

In *State v. Knight,* 219 Kan. 863, 866, 549 P.2d 1397 (1976), the Supreme Court stated the general rule to be "a threat otherwise coming within the purview of a statute need not, unless the statute expressly so requires, be in any particular form or in any particular words, and it may be made by innuendo or suggestion, and need not be made directly to the intended victim."

In *State v. Howell & Taylor,* 226 Kan. 511, 515, 601 P.2d 1141 (1979), the defendant argued that "threat" as defined in K.S.A. 1978 Supp. 21-3110(24) requires a communicated intent to inflict physical or other harm on any person or on property, and that "communicated intent" is restricted to verbal communication. The significance of defendant's argument is that the definition for "threat" as used in the terroristic threat statute was also adopted from K.S.A. 1978 Supp. 21-3110(24). The Supreme Court rejected defendant's argument, stating that the firing of a gun at the law enforcement officer "was a sufficient communicated intent to inflict physical harm to constitute a threat as defined by K.S.A. 1978 Supp. 21-3110(24)." Thus, we are of the opinion that a threat under K.S.A. 21-3419 is not limited to a written or oral threat but can be inferred from a physical act.

The question then arises whether the burning of a cross on the property of another can amount to a terroristic threat. The threat to commit violence must be communicated with the intent to terrorize another. The fact that the intent is to accomplish some result other than to terrorize is not sufficient, although it may well constitute another crime. It is the intent to terrorize another, *i.e.,* the reaction desired by the communicator regardless of whether the threat is real or even capable of being carried out, that constitutes the offense. All circumstances surrounding the communication, including the relationship between the parties, must be considered in determining whether the communication in issue is a terroristic threat. *State v. Porter,* 384 A.2d 429, 432 (Me.

1978). We hold that the burning of a cross on the property of another is not per se a terroristic threat as prohibited by K.S.A. 21-3419, but the surrounding facts and the relationship of the parties involved may be such that a properly instructed jury could find that the burning of a cross on the property of another is the communication of a terroristic threat. We have examined the record and are of the opinion it contains sufficient evidence when viewed in the light most favorable to the prosecution to convince us that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.

We would be justified in dismissing defendant's appeal for another reason. Defendant appeals from the overruling of his motion for a directed verdict of acquittal at the completion of the State's evidence. A defendant who presents evidence in his or her behalf, after the trial court has overruled a motion for acquittal at the close of the prosecution's case, waives any error in the denial of the motion. *State v. Blue,* 225 Kan. 576, ¶ 1, 592 P.2d 897 (1979). Here the defendant introduced evidence. The record before us does not give any indication that the motion for acquittal was renewed after the close of all the evidence. If it was, that motion is reviewable (all evidence presented would be considered by the trial court and this court in ruling on the motion for acquittal). The State does not raise this issue, and we are reluctant to decide the case on a nonjurisdictional issue not raised or argued by the parties, thus we decline to decide the case on that basis.

Affirmed.