Jerry REDFEARN, Appellant,

v.

The STATE of Texas, Appellee.

No. 6–86–011–CR.

Court of Appeals of Texas, Texarkana.

Aug. 25, 1987.

Discretionary Review Refused Dec. 2, 1987.

Bill Frizzell, Tyler, for appellant.

Thomas H. Fowler, Co. Atty. of Red River County, Clarksville, for appellee.

CORNELIUS, Chief Justice.

Jerry Redfearn was convicted of making a terroristic threat. The sufficiency of the evidence is not challenged, and Redfearn's only contention on appeal is that the charging instrument, the information, states no offense against the laws of the State. We disagree and affirm the conviction.

Redfearn was charged under Tex.Penal Code Ann. § 22.07 (Vernon Supp.1987), which in relevant part provides as follows:

> (a) A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to:
>
> ....
>
> (3) prevent or interrupt the occupation or use of a building; room; place of assembly; place to which the public has access; place of employment or occupation; aircraft, automobile, or other form of conveyance; or other public place; ....

The information states that Redfearn:

> [D]id then and there intentionally threaten to commit an offense involving violence to Henry Washington, namely assault Henry Washington by telling Henry Washington that Defendant had on said date released snakes in the building located at 1806 West Main Street in Clarksville, Texas where Henry Washington then and there resided, with intent to interrupt the occupation of said building by Henry Washington.

The offense involving violence which Redfearn is accused of threatening is an assault upon Henry Washington. *Assault*, defined by Tex.Penal Code Ann. § 22.-01(a)(1) (Vernon Supp.1987), requires that a person intentionally, knowingly or recklessly cause bodily injury to another. *Bodily injury* is defined as "physical pain, illness, or any impairment of physical condition." Tex.Penal Code Ann. § 1.07(a)(7) (Vernon 1974).

Redfearn contends that as a matter of law the act of telling someone of the release of snakes into his residence cannot constitute a threat of imminent bodily injury. He bases this contention upon the argument that a simple allegation of the release of *snakes*, as opposed to *dangerous and/or poisonous snakes*, cannot constitute a threat of imminent bodily injury. We disagree.

In *Garrett v. State*, 619 S.W.2d 172 (Tex.Crim.App.1981), it was held that an assault may be accomplished through the use of an animate or inanimate object, and that an assault may be had through the use of a dog, such as the Doberman pinscher involved in that case, which was not alleged to be dangerous. Certainly a threat to release snakes into a person's residence, whether or not the snakes are stated to be poisonous, is calculated to raise a reasonable apprehension of bodily harm on the part of the person threatened. The information thus states an offense even though the snakes are not alleged to be poisonous.

It is also argued that the information states no offense because the statement was that snakes *had been* placed in the building rather than that they *would be* placed there. This argument reveals a misunderstanding of the nature of the offense of terroristic threat. It is the threat of

harm—not the threat of a sterile act—that constitutes the offense. Implicit in the statement that snakes *had* been placed in the building was the threat of *future* harm from those snakes. It is similar to a statement that a time bomb had been placed in the building. The act of placing the bomb was in the past, but the *threat is of future* harm. *See Haas v. State*, 146 Ga.App. 729, 247 S.E.2d 507 (1978), *cert. denied*, 440 U.S. 922, 99 S.Ct. 1249, 59 L.Ed.2d 475 (1979). Indeed, cases construing similar statutes as that involved here have held that the threat need not be in any particular form or even in words at all, but may be made by acts, innuendo or suggestions. Acts which have been held to constitute threats include the burning of a cross on a victim's property, *State v. Miller*, 6 Kan. App.2d 432, 629 P.2d 748 (1981), shooting a gun at a police officer, *State v. Howell*, 226 Kan. 511, 601 P.2d 1141 (1979), and a statement that a bomb *had* been placed in the victim's place of business, *Haas v. State*, supra. The test is what is reasonably communicated to the victim. It is clear that the statement here communicated to the victim a reasonable apprehension of future violence.

For the reasons stated, the judgment of the trial court is affirmed.

GRANT, Justice, concurring.

I concur with the result reached by the majority.

Redfearn contends on appeal that the information fails to state an offense. In reviewing the complaint, I find that the information contains all the essential elements necessary to allege the offense of a terroristic threat. This offense has five essential elements.[1] It alleges that a person (Jerry Redfearn) threatened to commit an offense involving violence (assault) with the intent to interrupt the occupation of a building.

The dissent takes the position that the language in the information "by telling Henry Washington that Defendant had on said date released snakes in the building located at 1806 West Main Street in Clarksville, Texas" is repugnant to the portion of the information alleging a threat, because that language attributes a statement to Redfearn of an act which has previously occurred.

The terroristic threat statute was intended to cover threats of violence where the intent was to cause fear, emergency action, or substantial inconvenience. 2 Branch, *Texas Annotated Penal Statutes* § 22.07 explanatory comment (3d ed. 1974). The cases indicate that it is the desired reaction of the listener, regardless of whether or not the threat is real, that constitutes the offense. *Jarrell v. State*, 537 S.W.2d 255 (Tex.Crim.App.1976).

In the present case, the plain meaning of the statement made by Redfearn was not only intended to tell Henry Washington that he had just released snakes in Washington's residence, but that same statement was also clearly calculated to tell Henry Washington that these snakes were *still* in Washington's residence and constituted a continuing threat to Washington if he attempted to return to his residence. Redfearn's statement was to the effect that he had put in motion a force which was of a continuing nature.

Analyzing whether such constituted a threat, we can look to the definitions of threat set forth in the dissent: "an indication of something impending." Certainly the snakes in the dwelling constituted something impending. "[A]n expression of intention to inflict evil, injury, or damage." Nothing had been inflicted at this point. The damage or injury was not an accomplished fact. "[S]omething that threatens." Certainly the snakes are something that threatened Washington if he returned to his home.

Again looking at the definitions cited by the dissent from Black's Law Dictionary: A threat is "[a] declaration of intention or

1. 1. A person
2. threatens
3. to commit an offense involving violence
4. with intent to
5. prevent or interrupt the use of or occupation of a building, room, place of assembly, place to which the public has access, or a place of employment or occupation.

determination to inflict punishment, loss, or pain on another, *or to injure another by the* commission of some unlawful act." In the present case, the punishment or pain or injury had not yet occurred at the time the statement was made.

Looking at the offense in terms of a threat to commit an assault as defined under Tex.Penal Code Ann. § 22.01(a)(1) (Vernon Supp.1987),[2] a person commits an offense if he intentionally, knowingly, or recklessly causes bodily injury to another.[3] This was the type of assault alleged to have been threatened by Redfearn, but not yet complete because there had been no bodily injury. Thus it is a continuing threat which might be completed if Washington returned to his abode. Although Redfearn had done the act, it was not irreversible as far as bodily injury to the victim was concerned.

BLEIL, Justice, dissenting.

Jerry Redfearn was charged with and tried for the offense of threatening to assault Washington by threatening him with bodily injury. The trial court instructed the jury that "[a] person commits the offense of assault if the person intentionally threatens another with imminent bodily injury."[1] The majority, tacitly agreeing with Redfearn that a threat to assault by threat is not an offense, says that an assault can be committed in ways other than by threatening bodily injury and affirms his conviction for an offense for which he was not tried. Were justice a game I might cry "foul." As it is not, I enter my dissent to today's decision, which is both erroneous and fundamentally unfair.

The information filed against Redfearn in the County Court of Red River County charged an offense under Tex.Penal Code Ann. § 22.07(a) (Vernon Supp.1987).[2] That statute provides that a person commits an offense "if he threatens to commit any offense involving violence to any person...." What offense involving violence does the information allege that Redfearn *threatened to commit?* None.

To determine if the information charges him with an offense under Section 22.07(a), first the meaning of the word threaten must be ascertained. No definition is given in the statute; therefore, we are re-

---

**2.** This was not the assault definition given by the trial court in the charge. However, the defendant has not raised any issue on appeal concerning the charge, and therefore the scope of this opinion is limited to the validity of the information standing alone.

**3.** The information could not have meant a threat to make a threat as the dissent contends. The statute creating the crime of terroristic threat (Tex.Penal Code Ann. § 22.07 (Vernon Supp.1987)) requires that there be a threat to commit an offense involving violence. The very language in controversy in the information rejects the interpretation that this could be a threat to make a threat, because Redfearn's statement is alleged to have threatened an act which could result in bodily harm to Washington.

**1.** The parties and trial court were assuming that Redfearn was charged with threatening to commit an assault pursuant to Tex.Penal Code Ann. § 22.01(a)(2) (Vernon Supp.1987). The applicable provisions of Tex.Penal Code Ann. § 22.01 (Vernon Supp.1987) are:

Assault
(a) A person commits an offense if the person:
(1) intentionally, knowingly, or recklessly causes bodily injury to another, ...; or

(2) intentionally or knowingly threatens another with imminent bodily injury....

Thus, the trial court's definition of assault was taken straight from Section 22.01(a)(2). By basing today's decision squarely on Section 22.01(a)(1), the majority redefines the offense for which Redfearn was tried.

**2.** Tex.Penal Code Ann. § 22.07(a) (Vernon Supp. 1987) provides:

Terroristic Threat
(a) A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to:
(1) cause a reaction of any type to his threat by an official or volunteer agency organized to deal with emergencies;
(2) place any person in fear of imminent serious bodily injury; or
(3) prevent or interrupt the occupation or use of a building; room; place of assembly; place to which the public has access; place of employment or occupation; aircraft, automobile, or other form of conveyance; or other public place; or
(4) cause impairment or interruption of public communications, public transportation, public water, gas, or power supply or other public service.

quired to give the word "threaten" its plain meaning according to common usage. *Campos v. State*, 623 S.W.2d 657 (Tex. Crim.App.1981); *Ramos v. State*, 419 S.W.2d 359 (Tex.Crim.App.1967); Tex.Gov't Code Ann. § 311.011(a) (Vernon 1987).

Webster's New College Dictionary defines "threat" as: 1. an indication of something impending; 2. an expression of intention to inflict evil, injury, or damage; 3. something that threatens. Black's Law Dictionary defines "threat" as: A declaration of intention or determination to inflict punishment, loss, or pain on another, or to injure another by the commission of some unlawful act. In *People v. Holder*, 119 Ill.App.3d 366, 74 Ill.Dec. 907, 456 N.E.2d 628 (Ill.App.Ct.1983), the court discussed the offense of intimidation, which is similar to the offense of terroristic threat, and said:

> The gravamen of the offense of intimidation is the exercise of improper influence, the making of a threat with the intent to coerce another. (*People v. Hubble* (1980), 81 Ill.App.3d 560, 563–64, 37 Ill.Dec. 189, 192, 401 N.E.2d 1282, 1285.) It has also been held that implicit in the word "threat" as it is used in the intimidation statute, is the requirement " 'that the expression in its context have a reasonable tendency to create apprehension that its originator *will act* according to its tenor.' " (*People v. Gallo* (1973), 54 Ill2d 343, 352, 297 N.E.2d 569, quoting from *Landry v. Daley* (N.D.Ill. 1968), 280 F.Supp. 938, 961.) (emphasis added).

The first sentence in the Practice Commentary under Section 22.07 provides, "[t]his section is directed toward those who seek to cause terror or public inconvenience by threatening *to commit* crimes of violence." (emphasis added). The State charged Redfearn with having told Washington that he "had on said date released snakes in the building...." That statement certainly was not a threat to commit an offense involving violence, it merely related his past actions. Nor was it the classic threat in which the defendant intends to "execute his threat," to put his words into action. *See, e.g., Haynie v. State*, 2 Cr.R. 168 (1877). Indeed, the statement by Redfearn can under no reasonable construction be termed a "threat" to do anything. Further, assuming he had threatened Washington in some manner, the threat did not involve any future act on Redfearn's part as required by the statute. The statute specifically uses the future tense to describe the commission of the offense involving violence.

When the common meaning is applied to the language of the information filed against Redfearn, the conclusion logically follows that the offense of terroristic threat is not stated. Conduct such as that alleged to have been committed by this defendant cannot be condoned. Perhaps the information did charge an offense under one or more of the provisions of Title 18 of the United States Code (Crimes and Criminal Procedure). Or, perhaps the alleged conduct constitutes an assault or reckless conduct under Tex.Penal Code Ann. § 22.01 (Vernon Supp.1987) or § 22.05 (Vernon 1974). But, no matter how bad the conduct alleged may be, it cannot logically be said to be a threat by Redfearn "to commit any offense involving violence."

The majority's comparison of the allegations against Redfearn to a statement that a "time bomb had been placed in the building" underscores its misunderstanding of the requirement of a threat of some future action *on the part of a defendant.* Placing a time bomb in a building would be committing several offenses but it would not be a *threat* to commit an offense involving violence under Section 22.07.

The majority's reliance on *Garrett v. State*, 619 S.W.2d 172 (Tex.Crim.App.1981), and the Kansas and Illinois cases, which hold that a threat need not be verbal but may be committed by acts, innuendo or suggestion, evidences a further misapprehension of the real issue before the Court. No legitimate question exists concerning whether an assault can be committed by a threat of bodily injury by use of snakes, dogs, wasps or a pack of wolves. The issue is whether the information charged

Redfearn with threatening to commit any offense involving violence.

Undoubtedly, the information alleges that Redfearn intended to prevent or interrupt Washington's occupation of the building, the intent set out in Section 22.07(a)(3). But is there an allegation of a *threat to commit any offense?* A plain reading of the information leads to but one conclusion: the information does not allege terroristic threat under Section 22.07.